**Alice DOYLE, Respondent-Appellant,**

v.

**Albert DOYLE, Jr.,
Appellant-Respondent.**

**Nos. KCD 29757, KCD 29765.**

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Motion for Rehearing and/or Transfer
Denied Jan. 31, 1979.

Robert F. Sevier and Roger Guy Burnett, Liberty, for Alice Doyle, respondent-appellant; Sevier & Burnett, Liberty, of counsel.

Joseph Y. DeCuyper and Hsiang-Lin Lee, Kansas City, for Albert T. Doyle, Jr., appellant-respondent; Snowden & DeCuyper, Kansas City, of counsel.

Before HIGGINS, Special Judge, Presiding, WELBORN, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

Appellant, Alice Doyle, here contends that the trial court's division of marital property in this dissolution case was an abuse of discretion in that it awarded her only $88,515.00, out of the total net marital assets of about $197,881.00. The award to respondent, Albert Doyle, Jr., after allowance for his payment of debts, was about $109,300.

Alice and Albert were married November 8, 1957. Albert then worked as a painter-stenciler, later he sold insurance, and operated heavy equipment until he entered the farming business with his father in 1968 on a full time basis, which was his occupation at the time of dissolution. He was considered to be an excellent farmer in the community. After the marriage, Alice had been continuously employed in a variety of jobs, and while they were on the farm in Kearney, Missouri, she worked for two banks. At the time of dissolution she was earning $525.00 per month as a secretary. In addition to her work, she was also a homemaker, both parties agreeing that she was a good housekeeper and cook until the marriage began to deteriorate. When the parties built their farm home, both contributed to that work, she working inside the house, painting and varnishing, and he doing electrical, heating and carpentry work. The farm was purchased with proceeds from the sale of a house and savings from Alice's earnings of $3,000.00 per year and Albert's heavy equipment income during the early part of the marriage. In the year of dissolution, Alice was working 40 hours a week or about 2,000 hours a year compared to Alfred's farm work of 2,500 to 3,000 hours annually. Prior to the separation Alice mended Albert's clothing and did the washing and ironing. The parties were in some dispute as to Alice's help in the farm operation, she testifying that she helped load hogs, separate cattle, paint fences, build grain bins and was keeping the farm books. Albert denied that she helped him load hogs or feed the stock.

During the course of the marriage, joint savings and checking accounts were accumulated, all living and farming expenses being paid out of the checking account. Alice deposited $100.00 per month into the savings account, and after she had accumulated $5,000.00, it was withdrawn to purchase cattle. In November, 1973, Albert took all but $100.00 from the joint account, and placed it in a joint account with his father. This precipitated Alice's refusal to file a joint income tax return with him.

The parties had no children, it being agreed by them that they would not have children until they could properly care for a family. In 1964, after the first home was paid for, Alice wanted children but was told there was not enough money. Albert testified that after the move to the farm in 1965, he wanted children, but Alice, being then 28 years old, felt that she was too old, and being unable to drive, there was no way to take any child to the doctor or to school. Albert refused to teach Alice how to drive, saying that he was not qualified. Her sister did teach her and she obtained her license in 1975, but Albert would not allow her to drive the family car even though he drove it once every one or two months, since he used the pickup truck. She later bought her own car, but he would not permit her to put it in the two-car garage, one-half being used for the storage of the seldom used family car, and the other half being used by him to store chemicals.

Albert would not attend church, which Alice attended regularly with neighbors. He would not take her to social events, nor would he attend her parents' 50th wedding anniversary. On two occasions, Albert beat Alice, once when she signed for a registered letter to him although she did not open it. At the time of that incident, he threw his dinner in the kitchen sink, poured lemonade over it, and threatened to kill her if she left him and tried to take any of their property. Albert denied that he struck Alice, but admitted that he cursed her frequently.

■ The parties do not dispute the trial court's finding of the gross and net values of their marital property, but only the division thereof. Alice contends in her sole point that the facts here speak of an even

stronger case for her being awarded at least one-half of the marital property than those in the case of *In re Marriage of Cornell*, 550 S.W.2d 823 (Mo.App.1977). In her conclusion she asks for a money judgment of $100,000 in lieu of the $80,000.00 money judgment awarded by the trial court. She says that the award was against the weight of the evidence after taking into consideration all relevant factors including those enumerated in § 452.330, RSMo 1969: (a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker; (b) The value of property set aside to each spouse; (c) The economic circumstances of each spouse at the time the division of property was to become effective; and (d) The conduct of the parties during the marriage. Subsection 2 of that statute defines "marital property" as all property acquired by either spouse subsequent to the marriage. The only non-marital property found by the court was Albert's $5,000 life insurance policy in the Farm Bureau Insurance Company. Albert's Point V contends that the court made an excessive award to Alice considering the four factors of § 452.330.

It is plain from this record that the marital property was acquired as a result of the joint efforts of the parties. In *Corder v. Corder*, 546 S.W.2d 798, 804[9] (Mo.App. 1977), "[T]he * * * Act views the acquisition of 'marital property' as a partnership endeavor, and it enunciates a standard for dividing such property which is flexible enough to weigh and balance the respective contributions of the spouses and to accommodate consideration of manifest justness and fairness." Here, it is clear that Alice's earnings went into the marriage partnership. Additionally, it is without doubt that she was an efficient homemaker, and it is not contested that Alice at least helped in separating cattle, building grain bins and keeping farm books, all pertaining to the farm operation. In the *Cornell* case, supra, the court reversed an award to the wife of 29.77% to 32% of the marital property and directed that the property be practically divided equally where, at page 826, the court said, "Although the husband was the obvious breadwinner and his efforts at Leggett & Platt were the primary source of the family's wealth, the statute also requires recognition of the wife's role as a mother and homemaker. *Cain v. Cain*, 536 S.W.2d 866, 874 (Mo.App.1976). Also not to be ignored is the fact Shirley worked for two years to support the family while Harry completed his college education. *In re Marriage of Vanet*, supra, 544 S.W.2d 236 at 241."

There is no evidence at all of any misconduct on Alice's part other than her wish not to have children, which is insubstantial. On the other hand, there is evidence of Albert's mistreatment and abuse of Alice. This factor obviously was not taken into account by the trial court in its award of a *greater* amount of marital property to Albert, and the amounts should be equalized. This disposes of Albert's Point V.

As to the remaining contentions here made by Albert: First, that the court erred in not dismissing Alice's petition because of her (alleged) failure to answer interrogatories. The brief does not set forth the interrogatories and answers; he does not demonstrate wherein and why the trial court erred, or whether it abused its discretion in applying sanctions under Rule 61.01 for failure to comply with discovery. Second, that the trial court erred in permitting Alice to read parts of his deposition as admissions against interest. Again, Albert has failed to refer this court to statements he considered not to be admissions against interest. These are violations of Rule 84.04(d), and the contentions (Points I and II) will not be considered.

Albert next contends that the court erred in reversing its previous ruling sustaining objections to witness Comb's testimony as to the value of certain farm machinery owned by the parties. The objections were that there was no foundation laid that the witness was familiar with the types of equipment, he not having viewed them. Assuming that the testimony was inadmissible, there was no prejudice be-

cause the trial court did not accept Comb's testimony as to values, its findings being in line with values given by owners Alice and Albert in their testimony. Combs gave a total value of $13,000; Alice a total value of $8,440; Albert a total value of $6,400; and the court found the value to be $8,050. Thus, Albert has not demonstrated an absence of sufficient competent evidence to support the trial court's decree in this court-tried case where it is practically impossible to predicate reversible error on erroneous admission of evidence. *City of Butler v. Kuecker*, 559 S.W.2d 575, 578[4] (Mo.App.1977); *Farr v. Lineberger*, 207 S.W.2d 455, 459[6, 7] (Mo.1948). Point III, raising the contention, is overruled.

In Point IV Albert contends that the court erred in finding that growing crops on rented ground, valued at $22,230, was marital property. He argues that the testimony of the value of growing crops was mere speculation, citing *Williams v. Williams*, 548 S.W.2d 224 (Mo.App.1977). That case held merely that the (future) profits at the time of harvest were a mere expectancy, and thus is to be distinguished. Albert testified extensively about the number of acres of wheat, soybeans and corn on the three rented farms. Witness Combs personally inspected the grain fields the day before trial, and gave his expert opinion as to their fair market value, as a tenant's share, standing in the field. "Annual crops raised by yearly labor and cultivation are fructus industriales, and are to be regarded as personal chattels, independent and distinct from land, capable of a sale without regard to whether growing or matured." *Swafford v. Spratt*, 93 Mo.App. 631, 67 S.W. 701, 702 (1902), and cases cited. The values given by Combs clearly related to the crops in place, and were much less than the estimate of potential value at harvest time, also given by him. These crops, planted and cultivated during the marriage, were marital property, and the trial court did not err in so considering them.

Albert's Point VI contention is that the court erred in allowing 8% interest on the money judgment given Alice. Alice concedes that the proper rate is 6%. § 408.040, RSMo 1969. That judgment, upon which Albert posted a supersedeas bond, upon which Alice was unable to execute, and as herein modified (increased) should bear 6% interest from the time of entry. Compare *Sebastian County Coal & Mining Co. v. Mayer*, 310 Mo. 104, 274 S.W. 770 (1925); *Whitmire v. Lawrence, Barry and Stone Counties Mut. Ben. Ass'n*, 286 S.W. 842 (Mo.App.1926); 45 Am.Jur.2d, Interest & Usery, § 108, p. 94; and Anno. 4 A.L.R.3rd 1221.

Point VII is that the trial court failed to include a brief opinion containing a statement of grounds for its decision after request therefor. An examination of the findings which cover the factors of § 452.-330 shows it to be sufficient as to grounds. The point is overruled.

That part of the decree awarding Alice $80,000.00 with interest at the rate of 8% per annum, payable in installments, is reversed and the case is remanded with directions to enter a new money judgment for appellant, Alice Doyle, in the amount of $90,000, payable in installments, $20,000 as due on September 1, 1977, and in five equal installments of $14,000 on the same day of each year thereafter, together with interest at the rate of 6% per annum. In all other respects, the judgment is affirmed.