**Kayla M. CARTER, Respondent,**

v.

**Russell A. CARTER, Appellant.**

**No. WD 51853.**

Missouri Court of Appeals, Western District.

Feb. 25, 1997.

Theodore Kranitz, St. Joseph, for appellant.

Roger Prokes, Maryville, for respondent.

SPINDEN, Judge.

In this divorce action, Russell Carter appeals the circuit court's decision allowing Kayla Carter to move to Illinois with the couple's only child. He also alleges error in the circuit court's distribution of marital assets and in its including mandatory wage assignment language in the decree. We find no merit in his points of error, but we remand so the circuit court can make required findings of fact concerning its custody decision in light of evidence of domestic violence.

Russell Carter was 39-years-old, and Kayla Carter was 19 and pregnant when the couple wed on August 6, 1989. Their son, Ryan, was born on February 23, 1990.

Before the marriage, Russell Carter owned a 160-acre farm. The couple continued farming it after their marriage. The couple bought a second, 180-acre farm in July 1990. Kayla Carter helped her husband farm and pursued an undergraduate degree in agricultural education at Northwest Missouri State University. Russell Carter did not support his wife's educational pursuits, and the couple frequently argued. He constantly insulted her and made degrading comments to her. He often battered her—dragging her by her hair and hitting her, even when she was pregnant. Ryan saw or heard some of these incidents, including an unusually brutal beating on April 9, 1994. Kayla Carter moved out after the April 9 beating. She returned for Ryan six days later after obtaining a court order authorizing her to assume custody. She sued for dissolution of marriage on June 20, 1994.

In July 1994, after completing her college studies, Kayla Carter obtained a court order authorizing her to move with Ryan to Sully, Iowa—about 190 miles from Maryville—to accept a teaching position there. She had submitted 20 to 25 resumes before finding the position in Iowa.

Apparently under pressure from the principal, she resigned the position at the close of the 1994–95 school year. In her search for a new job, she mailed 25 to 30 resumes to schools in Iowa, Missouri, Illinois, Kansas, South Dakota, and Minnesota. She included in her list a district in Nodaway County. She interviewed for positions at several places closer to Nodaway County than Sully, but she did not receive an offer from those districts. A school district in Robinson, Illinois, offered her a teaching position, and she accepted. Robinson is about a 9- to 10-hour drive from Nodaway County.

After a trial of Kayla Carter's petition, the circuit court on October 10, 1995, awarded Kayla Carter marital assets of $141,450, including the 180-acre farm which was subject to a $56,561 debt. Her net marital distribu-

tion was $84,889. She received nonmarital assets of $650. The court awarded Russell Carter marital assets of $147,369, subject to $100,218 of debt. His net marital distribution was $47,151. He received $166,485 in nonmarital property, including the 160–acre farm which was subject to a $55,812 debt. His net nonmarital distribution was $110,673.

Although the guardian *ad litem* recommended that Ryan be placed in his mother's custody, the circuit court ordered joint legal custody. It ordered that Kayla Carter have primary physical custody, and it granted her permission to move Ryan to Illinois. The court ordered that Russell Carter have temporary custody of Ryan during Christmas vacation, during eight consecutive weeks each summer, and at other times agreed to by the couple with reasonable notice.

Russell Carter complains that the circuit court erred in allowing Kayla Carter to move Ryan to Illinois because she did not establish that the move was in the boy's best interest or that she was unable to find employment in Missouri. Viewing the evidence in the light most favorable to the circuit court's determination,[1] we find sufficient evidence supporting the circuit court's order allowing Kayla to move to Illinois with Ryan.

■ Our paramount concern is Ryan's best interest. *Carter v. Schilb,* 877 S.W.2d 665, 667 (Mo.App.1994). To assist in the court's determination of whether to allow a custodial parent to move with a child out of state, we have recognized a four-factor test:

(1) The prospective advantages of the move in improving the general quality of life for the custodial parent and child, (2) the integrity of the custodial parent's motives in relocating (whether primarily to defeat or frustrate visitation and whether the custodial parent is likely to comply with substitute visitation orders), (3) the integrity of the noncustodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support, and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

*Michel v. Michel,* 834 S.W.2d 773, 777 (Mo. App.1992).

■ Having resigned her teaching position in Sully on the principal's recommendation, Kayla Carter had to move to a different district to continue teaching. The only teaching job she was able to find was in Robinson, Illinois. Russell Carter's only objection to Robinson was its distance from Maryville. Rather than trying to prevent Ryan from having a good relationship with his father, Kayla Carter recognized the importance of having Ryan spend a significant amount of time with Russell Carter on his farm during the summer. We are confident that the circuit court's giving Russell Carter extended periods of uninterrupted time with his son will be as effective in preserving their relationship as the previous arrangement of Russell Carter's driving his son back and forth (an eight hour round trip) between Maryville and Sully every weekend. Because Ryan has begun school, such trips are no longer practical anyway. While we do not discern any ill motives in Russell Carter's opposing his son's relocation, we conclude that the circuit court had sufficient evidence in applying the other *Michel* factors in Kayla Carter's favor to permit the relocation.

Russell Carter also contends that the circuit court's order was not supported by evidence establishing that his son's relocation to Illinois was in the boy's best interests. We disagree. The record denotes a continuous pattern of Russell Carter's directing insults and degrading comments toward his wife. It established frequent beatings and other physical attacks. The guardian *ad litem* commented, "We can't have ... [derogatory statements being made about the mother in front of the child]. If it's always going to be like that ... there's never going to be a bond between the parents—or between the mother and child." About the beatings, he said, "The thing that I can't get over is the thought of raising a kid in a home—or with somebody who thinks it's okay to hit women. A five-year-old already knows—already

1. See *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

knows what's going on in that home. And it's not in his best interest to be in that." The guardian recommended that the circuit court place Ryan in Kayla Carter's custody.

■ Notwithstanding the evidence of Russell Carter's physical violence, the circuit court issued no written findings of fact to satisfy § 452.375.12, RSMo 1994, which says, "If the court finds that domestic violence has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm." This court has construed § 452.375.12 as mandatory in all cases, requiring "the entry of findings of fact as to the basis of the decision on custody and visitation regardless who is given primary custody." *Gant v. Gant*, 892 S.W.2d 342, 347 (Mo.App.1995)(construing § 452.375.11 which has been recodified as § 452.375.2(12)).

While we have no doubt that the circuit court considered the evidence and made its custody determination with Ryan's best interests in mind, we feel constrained by § 452.375.12 to remand so the circuit court can make determinations which satisfy the statute. If the court determines that domestic violence occurred, it shall make specific findings showing that its custody and visitation orders best protect Ryan and Kayla Carter from further harm. We are confident that the record is sufficient to make these determinations without receiving additional evidence, but the circuit court is free to do so if it deems additional evidence is needed.

In his next point, Russell Carter contends that the circuit court's distribution of marital property was so inequitable that it constituted an abuse of discretion. The circuit court awarded 64 percent of the couple's marital property to Kayla Carter.

■ Equal division of property is not required, but the division of property should be fair taking into account the factors enumerated in § 452.330.1, RSMo 1994. *Ray v. Ray*, 877 S.W.2d 648 (Mo.App.1994). We do not discern an inequitable distribution.

■ Section 452.330.1(2) and (3) requires the circuit court to consider each spouse's contribution in acquiring marital property and the value of the nonmarital property set aside to each. Kayla Carter helped Russell Carter with the farming operation while they were married. She contributed $23,000 worth of her own, nonmarital funds to the purchase of the second, 180–acre farm, and gave $20,000 of her own, nonmarital money to make a combine payment and to finance farming operations in 1994. The circuit court awarded Kayla Carter only $650 worth of nonmarital property although she had contributed $43,000 in her own, nonmarital cash to marital endeavors.

■ Section 452.330.1(4) requires the circuit court to consider the parties' conduct during the marriage. The circuit court heard evidence that Russell Carter violently attacked his wife, and at least two of those incidents occurred in their son's presence. Marital misconduct is a factor in property division when the offending conduct places extra burdens on the other spouse. *Yount v. Yount*, 821 S.W.2d 876, 881 (Mo.App.1991). Russell Carter suggested that his wife provoked his attacks, but provocation "does not mitigate the effect of the abuse or make unjust the trial court's distribution." *Tully v. Tully*, 813 S.W.2d 926, 929 (Mo.App.1991).

Russell Carter complains of three specific items in the distribution. The first regards $34,844 which the circuit court setoff as his marital property. The second is the amount of debt which the court assigned to him, and the third concerns the court's allocating the current crop on the 180–acre, marital farm awarded to Kayla Carter with no setoff to him for the seed, fertilizer, and his labor expended to work the crops.

■ Concerning the $34,844 setoff from Russell Carter's marital property, in January 1995 Russell Carter sold approximately $40,000 in marital crops and cattle and applied the proceeds to the payment of a loan securing his nonmarital farm. Section 452.330.2(5) defines marital property as all property acquired by either spouse subsequent to the marriage except "[t]he increase in value of property acquired prior to marriage ... unless marital assets including labor, have con-

tributed to such increases and then only to the extent of such contributions." This specifically identifies that the increase in the nonmarital property's value (the reduction of indebtedness against Russell's farm property) through the application of marital assets (the cash obtained by the sale of marital crops and cattle) is to be designated as a marital asset. Russell Carter received full benefit of this marital asset when he was awarded the nonmarital farm with a much smaller indebtedness. His complaint is without merit.

■ His complaint about the amount of debt assigned to him is also without merit. Debts incurred during the marriage are not marital property, and the trial court is under no obligation to distribute debts, but the court should consider them in determining whether a division of marital property is fair. *Barnes v. Barnes,* 903 S.W.2d 211, 215 (Mo. App.1995). The circuit court awarded Kayla Carter the marital farm and the debt associated with it. The court awarded Russell Carter all of the marital farm equipment and much of the household goods—we presume so that he could continue farming. The court charged him with the debt associated with the farm equipment and farming operational expenses. This appears to be a fair basis for allocating debt. We do not discern a sufficient basis for finding that the trial court abused its discretion in allocating the debt.

■ As to the crops on the farm awarded to Kayla Carter, the circuit court also allocated to Russell Carter the crops growing on his farm and those growing on 280 acres of leased farm land. The seed, fertilizer, and labor expended before the divorce were a marital asset regardless of whether they were growing on marital property, nonmarital property, or leased ground. *Doyle v. Doyle,* 577 S.W.2d 64, 68 (Mo.App. 1979). While this presumption that growing crops are a marital asset may be overcome by showing that he used no marital funds or marital labor in growing the crops, § 452.330.2(5),[2] Russell Carter did not make the requisite showing. The circuit court properly divided the growing crops.

In his final point, Russell Carter complains that the circuit court erred in ordering him to execute an automatic wage assignment for child support delinquencies because he was a self-employed farmer. Since January 1, 1994, § 452.350.2 has required that every child support order require income withholding on the effective date of the order unless one of two specific exceptions applies. Section 452.350.2 says:

For all orders entered or modified in IV–D cases, and effective January 1, 1994, for every order for child support or maintenance entered or modified by the court under the authority of this chapter, or otherwise, income withholding under this section shall be initiated on the effective date of the order, except, that such withholding shall not commence with the effective date of the order in any case where:

(1) One of the parties demonstrates, and the court finds, that there is good cause not to require immediate income withholding. For purposes of this subdivision, any finding that there is good cause not to require immediate withholding must be based on, at least, a written determination and an explanation by the court that implementing immediate wage withholding would not be in the best interests of the child and proof of timely payments of previously ordered support in cases involving the modification of support orders; or

(2) A written agreement is reached between the parties that provides for an alternative arrangement.

The statute requires that a party demonstrate good cause for not requiring immediate withholding. It also requires the circuit court to make a written finding that implementing immediate wage withholding is not in the child's best interests.

■ Russell Carter claims that because he is self-employed and not a wage earner the immediate wage withholding is illogical. The statute, however, deals with income withholding, not merely wage assignment. While the statute mentions wage withholding, it more broadly refers to income withholding, and we find no authority which

2. See *Sprock v. Sprock,* 882 S.W.2d 183, 187 (Mo.App.1994).

would exclude the application of income withholding merely because the party to be charged is self-employed. To do so would defeat the legislative purposes of the statute in addressing the problems of the collection of child support.

Further, Russell Carter did not demonstrate that either of § 450.350.2's exceptions apply. We find no basis in the record establishing that immediate child support was not in Ryan's best interests. The circuit court did not have a basis, therefore, for making the requisite findings to exempt Russell Carter from the mandatory wage and income withholding assignment. Because Russell Carter did not demonstrate that § 452.350.2 does not apply, the circuit court had to include the mandatory wage and income assignment language in its decree.

We, therefore, affirm the circuit court's decree. We remand to the circuit court, however, so it can enter findings relating to the issue of domestic abuse and the determination of custody.

SMART, P.J., and ELLIS, J., concur.