Timothy M. FINNICAL, Respondent,

v.

Marilyn D. FINNICAL, Appellant.

No. WD 55810.

Missouri Court of Appeals,
Western District.

May 11, 1999.

Rehearing Denied June 29, 1999.

Gwendolyn Froeschner, Columbia, for Appellant.

Stephen Caruso, Kansas City, Tom Bark Kretsinger, Jr., Liberty, for Respondent.

SPINDEN, Presiding Judge.

Marilyn D. Finnical appeals the circuit court's judgment denying her an award of maintenance in this dissolution of marriage action. She contends that the circuit court abused its discretion in weighing the factors which the General Assembly has mandated that a circuit court consider in deciding whether to award maintenance, and she argues that the circuit court erred in its distribution of marital property and in not ordering Timothy Finnical to pay more of her attorney fees.

Marilyn Finnical contends that the circuit court abused its discretion by not ordering Timothy Finnical to pay her maintenance. She complains that, although the court specifically found that factors existed which inhibited her ability to work, it found that she could support herself through employment or income from assets. She argues that the evidence showed that she has no income-producing assets from which to support herself. She asserts that this, combined with the circuit court's findings that her mental health disorders may prevent her from earning income sufficient to support herself, should have resulted in the circuit court's awarding maintenance to her.

The circuit court has broad discretion in deciding whether to order maintenance. This means that the circuit court's decision will stand unless it is not supported by substantial evidence, is against the weight of the evidence, or erro-

neously declares or applies the law. *Wallace v. Wallace*, 839 S.W.2d 354, 356 (Mo. App.1992). We review the circuit court's decision by viewing the evidence in the light most favorable to the decision. *Id.*

■ When a party requests maintenance, the circuit court must determine what the party's reasonable needs are. *Hosack v. Hosack*, 973 S.W.2d 863, 870 (Mo.App.1998). Section 452.335.1, RSMo 1994, requires the circuit court to evaluate whether the party has property sufficient to meet his or her reasonable needs, and, if not, whether that spouse can meet his or her needs through appropriate employment. *Witt v. Witt*, 930 S.W.2d 500, 503 (Mo.App.1996).

The circuit court did not make any findings of fact concerning Marilyn Finnical's reasonable needs. She presented uncontested evidence that her reasonable monthly living expenses were $2339. The circuit court made no findings as to whether Marilyn Finnical had sufficient property to meet her reasonable needs and found that she may be unable to support herself through appropriate employment. The circuit court said:

> ... [Marilyn Finnical], although educated (she received a B.A. in English in 1961 and has accumulated several hours towards a degree in Television/Film Industry), ... last worked full-time in 1962 as a flight attendant for Ozark Airlines[,] which employment lasted approximately six to eight months ... and had various jobs in the early 1960's.
>
> ... [Marilyn Finnical] has lived her lifestyle primarily as a homemaker. [Marilyn Finnical] met [Timothy Finnical] while [she] was a homemaker[,] and she has not worked outside the home throughout the entire duration of this marriage.
>
> ... [Marilyn Finnical] also suffers from a variety of mental health disorders that may prevent her from earning an income sufficient to provide for her reasonable needs. Her mental health disorders adversely affect her ability to

support herself. Ill health or physical disability which adversely affect the ability to support [one's] self is consistently recognized as a relevant factor in awarding maintenance. *In re the Marriage of: Reed*, 762 S.W.2d at 85.

> ... [Marilyn Finnical] has been under the care of a psychiatrist prior to and throughout the period of her separation from [Timothy Finnical] and[,] based upon reasonable medical certainty[,] has been diagnosed as suffering from major depression and moderate severity from a panic disorder with agoraphobia.
>
> ... The evidence presented to the Court shows that [Marilyn Finnical] would not be suitable for certain types of employment.
>
> ... The Court does not feel that [Marilyn Finnical] has made a serious effort to obtain employment; instead relying on the $1,000.00 per month paid by [Timothy Finnical] without Court order until November of 1996. The testimony of [Timothy Finnical] was that [Marilyn Finnical] said, "I'm too aristocratic to work." The Court finds that [Marilyn Finnical] maintained herself with child support from her first husband and then on the $1,000.00 per month paid by [Timothy Finnical].

We find no evidence that Marilyn Finnical had sufficient property from which she could support herself. The circuit court awarded to her the marital house whose fair market value was $100,000, but was encumbered by a $50,000 mortgage, a 1985 Jeep Cherokee whose fair market value was $1200, a checking account containing $250, household goods and personal clothing worth approximately $2500, a painting valued at $7500, and $250 worth of health insurance reimbursement checks.

■ To assist in meeting their reasonable needs, a party has a duty to seek full-time employment after a divorce. *Wallace*, 839 S.W.2d at 357. The circuit court must, of course, consider the party's physical or mental conditions which affect his or

her ability to earn money sufficient to meet his or her reasonable needs. *In re Marriage of Liljedahl,* 942 S.W.2d 919, 924–25 (Mo.App.1996).

■ The circuit court determined that Marilyn Finnical's mental health conditions "may prevent her from earning an income sufficient to provide for her reasonable needs," but it concluded that she would not know until she tried, and that she had not "made a serious effort." The circuit court's finding concerning Marilyn Finnical's mental condition was supported by substantial and competent evidence. We found no evidence which supports the circuit court's finding that she had not made a serious effort to find work at the time of the divorce.

The only evidence relating to Marilyn Finnical's attitude toward finding a job was testimony by Timothy Finnical and a psychiatrist presented by Timothy Finnical. Finnical testified that his wife had rebuffed his frequent demands throughout the marriage that she get a job. A psychiatrist testified that, although he agreed with the diagnosis of Marilyn Finnical's treating psychiatrist that Marilyn Finnical suffered major depression, she was "a bright educated person who can talk well and relate well" and that he "didn't see anything that would indicate that she couldn't be a receptionist or an aide or . . . some kind of sales [clerk]."

The circuit court's focus on Marilyn Finnical's attitude about working during the marriage—manifested by its emphasizing Timothy Finnical's testimony that his wife had been "too aristocratic to work"—was misplaced. The issue was not Marilyn Finnical's attitude during the marriage, but her ability at the time of the proceedings to earn an income sufficient to meet her reasonable needs.

■ We remand this case to the circuit court for it to focus on Marilyn Finnical's

present attitudes and to impute to her, in light of her abilities, a reasonable level of expected income, if any. The circuit court may impute income to a spouse based upon what he or she could earn using his or her best efforts to gain employment suitable to his or her capabilities. *Liljedahl,* 942 S.W.2d at 924. "Appropriate employment" is employment "appropriate to [a person's] skills and interests." *Witt,* 930 S.W.2d at 504. To the extent that this imputed income does not satisfy her reasonable needs, the circuit court shall consider the factors set forth in § 452.335.2, RSMo 1994, in ordering Timothy Finnical to pay her reasonable maintenance.[1]

Marilyn Finnical's second point is more of an extension of her first point than a presentation of a new issue. She complains that the circuit court's deciding that the evidence did not support "a finding that [she] relied upon the spouse for monetary support and was out of the marketplace at [the] request of [Timothy Finnical]" was contrary to evidence that she relied solely on Timothy Finnical for support. We agree that the circuit court misspoke in saying that the evidence did not support a finding that she had relied on Timothy Finnical for monetary support, but this mistake is of no consequence. This is because the essence of the circuit court's finding was that the Finnicals' case was unlike the situation which the court faced in *Brock v. Brock,* 936 S.W.2d 882 (Mo.App.1997). In *Brock,* the court said, "In a marriage where a spouse relies on the other spouse for monetary support, and is out of the marketplace [with the consent of the other spouse], thereby injuring the spouse's marketable skills, this type of reliance may warrant an award of maintenance." *Id.* at 885. Marilyn Finnical does not contest the circuit court's finding that she was not "out of the marketplace" with Timothy Finnical's consent. Having already concluded that the circuit

---

1. Having reached this conclusion, we need not address the other issues which Marilyn Finnical raised in this point.

court needs to reconsider the issue of maintenance and Marilyn Finnical's ability to earn an income, we need not concern ourselves further with the portion of the finding which Marilyn Finnical does contest.

■ In her third point, Marilyn Finnical contends that the circuit court erred in finding that neither party was guilty of marital misconduct which caused a break-up of their marriage. Her point says:

> The trial court erred in its finding that there was no marital misconduct of either party that resulted in the dissolution of the marriage in that such a holding is against the weight of the evidence because the evidence clearly indicates that husband was physically and mentally abusive during the marriage, refused to share any financial information with wife during the marriage and on at least one occasion tricked her into signing a tax return without actually seeing the information on it.[2]

Because she does not explain what significance the perceived error had on the circuit court's judgment or direct us to what action of the court this finding affects, it violates Rule 84.04(d), and we decline to review the issue.

Rule 84.04(d) says:

> The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations and authorities thereunder....

> Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

The Supreme Court has said:

> [Rule 84.04] essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

*Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978). Violation of Rule 84.04 fails to preserve an issue for review. *Id.* at 684. We, therefore, dismiss her point.

In her fourth point, Marilyn Finnical contends that the circuit court erred in not awarding her maintenance on the ground that the parties had been "de facto" separated during most of their nearly 14–year marriage. She argues that the weight of the evidence established that the couple's unusual living arrangement resulted from Timothy Finnical's career as a special prosecutor, and that the circuit court's finding was against public policy not "to force" divorces. Timothy Finnical did not respond to this point in his brief.

Marilyn Finnical argues that the circuit court's charging her with responsibility for the couple's unusual living arrangement defied "the sanctity of marriage." She argues that the circuit court's finding was, in effect, "judicial legislation providing that an unspecified number of years of marital separation is the equivalent of a dissolution of marriage."

We agree that Marilyn Finnical should not be penalized for delay in filing for a divorce. *Ewing v. Ewing,* 901 S.W.2d 330, 334 (Mo.App.1995). We do not find any evidence in the circuit court's findings of fact and conclusions of law, however, suggesting that it denied maintenance on this ground.

In her fifth point, Marilyn Finnical contends that the circuit court's division of marital property was inequitable and, therefore, erroneous. She also contends that the circuit court erred in not dividing some marital property, including guns, jewelry and art prints, which she contended that Timothy Finnical converted to his own use during the marriage, and the val-

---

**2.** This point appeared in all capital letters in the brief.

ue of Timothy Finnical's two retirement plans. She argues that the circuit court should have given her more property because of Timothy Finnical's alleged marital misconduct and because of the wide difference in their earning capacities.

▮▮▮ The circuit court has broad discretion in dividing marital property. We will disturb a property division only when it is so "heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Allen v. Allen,* 961 S.W.2d 891, 893 (Mo.App.1998). The circuit court's obligation is to divide the marital property fairly—not necessarily equally— according to the factors enumerated in § 452.330.1, RSMo Supp.1997. *Carter v. Carter,* 940 S.W.2d 12, 16 (Mo.App. 1997).

The circuit court awarded Timothy Finnical marital property valued at $2650 and his interest in his retirement plans, listing their value as "unknown." On the other side of the ledger, the circuit court assessed to Timothy Finnical approximately $80,000 in debts and ordered him to pay Marilyn Finnical $5000 for her half interest in another $10,000 retirement plan that he had "cashed in" before the divorce. The circuit court awarded to Marilyn Finnical marital property which it valued at $11,700 and a nonmarital house which it valued at $100,000. The circuit court assessed her with $59,500 worth of debt.

▮▮▮ Marilyn Finnical complains that the circuit court did not divide the value of a car which Timothy Finnical drives. Timothy Finnical testified that he had leased the car, and Marilyn Finnical did not present evidence that he expected to keep it after the lease expired. The circuit court had a proper basis for concluding that the car was an expense, not an asset subject to being divided.

▮▮▮ As to the other property about which Marilyn Finnical complains, Timothy Finnical testified that he had exchanged $7500 worth of art prints for another person's making his car's lease payments. He also testified that he sold or gave away jewelry worth approximately $2500 and that he sold firearms for $7500 to $8800. Assuming that the firearms were worth $7500, this adds up to $17,500 in property. Preceding divorce, parties often must consume marital assets for living expenses. The circuit court is not obligated to include the value of all marital property which the parties disposed of before the hearing. Only when a spouse hides or squanders marital property in anticipation of divorce should the circuit court consider the asset's value in dividing the marital property. *Stratman v. Stratman,* 948 S.W.2d 230, 239 (Mo.App.1997).

Marilyn Finnical does not point to any evidence which suggests that Timothy Finnical squandered these assets in anticipation of divorce. She contends only that the circuit court should have considered them in the distribution of marital property. With the exception of the gifts of two pairs of cufflinks, Timothy Finnical testified that he used the proceeds from the majority of those assets for living expenses. We find no error in the circuit court's not including the value of these assets in its consideration of how to divide the marital property.

▮▮▮ Marilyn Finnical also complains that Timothy Finnical did not disclose the existence of his deferred compensation plan until one week before trial and that this violated his duty "to make a full and accurate disclosure of all assets and liabilities to facilitate the trial court's property distribution." *In re the Marriage of Sumner,* 777 S.W.2d 267, 273 (Mo.App. 1989). Each party has an equal burden to submit evidence of their property's value, and a party's not doing this precludes him or her from complaining about the circuit court's valuation on appeal. *Id.* At least one of the parties must present evidence which will permit the circuit court to make a fair and accurate valuation of the marital property. *Id.; Bidstrup v. Bidstrup,* 750 S.W.2d 712, 713 (Mo.App.1988).

Timothy Finnical presented evidence concerning the value of his retirement plan. Although the circuit court valued this benefit in its listing of the marital property, it did not value it in the property division. Timothy Finnical disclosed the plan's existence to Marilyn Finnical in his statement of marital properties filed on August 22, 1997. If Marilyn Finnical had wanted to contest the valuation, she had ample time before the hearing to obtain evidence of a different value. Timothy Finnical, however, did not present any evidence concerning the value of his deferred compensation plan. Considering that he did not disclose the plan's existence until the week before the hearing, Marilyn Finnical had limited opportunity to prepare evidence of its value.

When the circuit court does not have sufficient evidence of the property's value, we reverse the circuit court's property award and remand for the circuit court to take additional evidence concerning the property. *Endebrock v. Endebrock,* 916 S.W.2d 456, 459 (Mo.App.1996). We, therefore, reverse the circuit court's property division, and direct the circuit court to accept additional evidence regarding the value of Timothy Finnical's two retirement plans, and to determine whether Marilyn Finnical is entitled to any marital portion of those plans.

In her final point, Marilyn Finnical contends that the circuit court erred in ordering Timothy Finnical to pay only $3000 of her attorney fees. She argues that, because the circuit court did not determine that her attorney fees were unreasonable, it should have ordered Timothy Finnical to pay more because the disparate earning capacities of the parties demonstrated his greater ability to pay. She also points to evidence that Timothy Finnical elongated the dissolution proceedings and caused her to incur more attorney fees than would have otherwise resulted.

In ruling on Marilyn Finnical's request for attorney fees, the circuit court said:

The Court finds that [Marilyn Finnical] has already paid $16,208.79 to her attorney. The source of some of the funds was borrowed from her family members. [Marilyn Finnical] has requested additional fees of $17,113.92 to be paid by [Timothy Finnical]. The Court believes that the net assets of the parties do not justify payment of such attorney fees by the parties.

Concerning an award of attorney fees, § 452.355.1, RSMo 1994, says:

The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

Relevant factors in determining whether to award attorney fees include ability to pay and conduct which increased the other spouse's attorney fees. *Ansevics v. Cashaw,* 881 S.W.2d 247, 250 (Mo.App.1994). The circuit court has broad discretion in deciding whether to award attorney fees. *Leone v. Leone,* 917 S.W.2d 608, 616 (Mo. App.1996). To establish abuse of discretion, an appellant must show that the award was "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

The circuit court did not make any findings concerning Marilyn Finnical's earning ability. On the other hand, the circuit court found that Timothy Finnical's income during the previous three years had averaged nearly $160,000. The parties had few assets and much debt. Although the circuit court awarded Marilyn Finnical a house valued at $100,000 as her nonmarital

property, it assessed nearly $60,000 in debt to her, not including the $17,113.92 in attorney fees.

Although Timothy Finnical asserts that the circuit court determined that Marilyn Finnical's attorney fees were unreasonable and excessive, that contradicts the circuit court's statement that the "net assets of the parties do not justify payment of such attorney fees by the parties." Rather than suggesting a belief that Marilyn Finnical's debt to her attorney was unreasonable, this suggests that the circuit court believed that it should not order Timothy Finnical to pay more because of the small amount of assets. Had the circuit court believed that the attorney fees were excessive, it, an expert in the matter, *Kiem v. Kiem*, 945 S.W.2d 603, 606 (Mo.App.1997), surely would have said so.

Hence, because the circuit court based its ruling on the party's assets and not on the reasonableness of the fees, we conclude that it erred in not ordering Timothy Finnical to pay more of Marilyn Finnical's attorney fees. We note the large disparity in the parties' apparent earning capacities and Timothy Finnical's failure to comply with discovery requests thereby causing delays. *See Ellis v. Ellis*, 970 S.W.2d 416, 420 (Mo.App.1998).

We remand this case to the circuit court for reconsideration of the issues of maintenance and assessing the value and possible division of two retirement plans, and we reverse the circuit court's award of attorney fees with instructions that it reconsider the issue after determining the parties' ability to pay attorney fees.

EDWIN H. SMITH, Judge, and ALBERT A. RIEDERER, Judge, concur.