Janet Leigh STIDHAM, Appellant,

v.

Danny Lee STIDHAM, Respondent,

Norma Lee Stidham and Verdell
Stidham, Respondents.

No. WD 62274.

Missouri Court of Appeals,
Western District.

April 13, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 2004.

Daniel J. Pingelton, Esq., Columbia, MO, for Appellant.

Leslie M. Schneider, Esq., Columbia, MO, for Respondent Danny Stidham.

Gary L. Stamper, Esq., Columbia, MO, for Respondents Norma and Verdell Stidham.

Before HOWARD, P.J., HAROLD L. LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

Janet Leigh Stidham ("Mrs.Stidham") appeals from the trial court's decree dissolving her marriage to Danny Lee Stidham ("Mr.Stidham"). On appeal, Mrs. Stidham makes three contentions: (1) the trial court wrongfully categorized marital property as Mr. Stidham's separate property; (2) she should have been awarded maintenance; and (3) the court awarded her an inadequate amount for attorney's fees. The judgment is affirmed in part and reversed in part.

## I. FACTS

Mrs. Stidham filed for divorce from her husband of five years, Mr. Stidham, in

October 2001. Mrs. Stidham sought a distribution of the marital property, maintenance, and attorney's fees. No children were born of the marriage.

Throughout the Stidhams' marriage, Mr. Stidham was a farmer. He didn't own any farmland. Rather, he earned his money by sharecropping—raising and selling others' cattle and crops he grew on their land. Some of the cattle and crops were located on his parents' property. In exchange for raising and selling the cattle and crops, Mr. Stidham received fifty percent of the proceeds from their sale. Mr. Stidham deposited these proceeds into the Stidhams' joint checking account until the month after Mrs. Stidham had filed for divorce, at which time he closed the joint account, placed the money in an account in his name alone, and deposited further proceeds from sharecropping in the new account.

In June 2002, before the trial court dissolved the Stidhams' marriage, Mr. Stidham sold seventy-four cattle in his own name. Mr. Stidham testified that the proceeds from the sale of forty of the cattle were his wages, and that the proceeds from the sale of the thirty-four were a gift from his father.

After their marriage, the Stidhams initially lived in Mrs. Stidham's house. Later, they moved into a home Mr. Stidham had built on his parents' land with their permission. The home was built after the Stidhams' engagement. Mr. Stidham spent $112,000 of his personal savings, all amassed before he married Mrs. Stidham, to build the house. Mrs. Stidham did not help pay for the house, though she did help paint and wallpaper it and did some landscaping. Mr. Stidham's mother paid the real estate taxes. Mrs. Stidham did not pay any of the utility payments or insurance premiums for the house. The house has never been encumbered by a mortgage.

During the hearing on Mrs. Stidham's petition, Mr. Stidham was asked, "When you built the home and married Mrs. Stidham, your intention was, you would build the home, marry her, and that you would all live there as a married couple?" He responded by saying, "That's right."

In its findings of fact and conclusions of law, the trial court concluded that the house, Mr. Stidham's bank account (which had around $13,000 in it, according to the court), and the crops in the field at the time of the hearing, including the "profit from harvest or harvested crops still in his possession," were Mr. Stidham's separate property. According to the court, neither of the Stidhams had any interest in the land on which the house was built or in the cattle on that land. The court awarded Mrs. Stidham's counsel $1,500 in discovery sanctions. (Mr. Stidham's counsel had untimely produced requested tax returns.) Her request for attorney's fees was denied, as was her request for maintenance. The trial court found that Mrs. Stidham—who was making $1,693 per month and receiving $210 in child support a month—was able to meet her reasonable needs through employment.

## II. ANALYSIS

### A. CATEGORIZATION OF PROPERTY

Mrs. Stidham contends that the trial court wrongfully categorized the house, Mr. Stidham's bank account, and the crops and cattle and the proceeds from their sale as Mr. Stidham's separate property. They are marital property, according to Mrs. Stidham.

The categorization of property as either marital or separate is a discretionary decision, one that will be overturned only if the trial court abused its discretion.

*Jinks v. Jinks,* 120 S.W.3d 301, 305 (Mo. App.2003). A trial court abuses its discretion if its decision rests on a misunderstanding of law. *Lifritz v. Sears, Roebuck & Co.,* 472 S.W.2d 28, 33 (Mo.App.1971). *See also Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir.2001) ("A district court abuses its discretion if it commits an error of law.").

### 1. THE HOUSE

 The house in which Mrs. Stidham and Mr. Stidham lived was clearly martial property because it was created in contemplation of marriage and intended to become—and did become—the marital abode. Property bought in contemplation of marriage and intended to be marital property is marital property. *Beckham v. Beckham,* 41 S.W.3d 908, 914 (Mo.App. 2001); *Colborn v. Colborn,* 811 S.W.2d 831, 834–35 (Mo.App.1991). During trial, Mr. Stidham made a judicial admission that he had the house built in contemplation of marriage and that he intended the house to be marital property. Unequivocal testimony by a party concerning a material fact peculiarly within that party's knowledge and which undermines the party's claim or defense is a judicial admission, "unless [the party] gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding." *Jockel v. Robinson,* 484 S.W.2d 227, 231 (Mo.1972). *See also State v. Olinger,* 396 S.W.2d 617, 621–22 (Mo.1965) ("When a defendant makes a voluntary judicial admission of fact before a jury, it serves as a substitute for evidence and dispenses with proof of the actual fact and the admission is conclusive on him for the purposes of the case.").

Asked at trial, "When you built the home and married Mrs. Stidham, your intention was, you would build the home, marry her, and that you would all live there as a married couple?" Mr. Stidham said, "That's right." Other testimony, illustrated by the following series of questions and answers by Mr. Stidham, was to the same effect:

Q: Now, the—Are you denying, sir, that you always indicated to Mrs. Stidham that—well, until you guys split up, that the house was built for purposes of you all living in there are [*sic*] a marital couple, as a marital home?

A: That's where most wives live, ain't it, with—with you?

Q: I mean, you—you—

A: Yeah, I built it for us to live in, her and her kids.

* * *

Q: That was your intention, that this house would be your house as you lived together as a married couple, right?

A: As long as we was married.

Mr. Stidham never attempted to explain away or retract these statements. Thus, the trial court was bound to conclude that the house was marital property. *See In re Estate of Mounts,* 39 S.W.3d 499, 506 (Mo. App.2000); *Peace v. Peace,* 31 S.W.3d 467, 471 (Mo.App.2000).

That the house was built on land owned by Mr. Stidham's mother is irrelevant in deciding whether to categorize the house as marital or separate property. The house was not a gift from Mr. Stidham's mother. Rather, it appears that she gave Mrs. Stidham and Mr. Stidham a license to build the house on her land to live in it—a license that may well have become irrevocable by way of equitable estoppel. *See Hermann v. Lynnbrook Land Co.,* 806 S.W.2d 128, 130 (Mo.App.1991); *Wood v. Gregory,* 163 S.W.2d 355, 356 (Mo.App. 1942) ("If defendant erected a building on the premises and operated a store thereon and was entitled to occupy said premises as long as he conducted such business

thereon, plaintiff could not retake possession at will."). Also irrelevant, given Mr. Stidham's judicial admission, is the fact that Mr. Stidham provided all the money to build the house, that he (and his friends) built the house from the ground up (with minimal contributions from his wife), and that Mrs. Stidham paid none of the phone and utility bills and insurance premiums, though they are relevant in determining how to apportion the house. *But cf. Jinks*, 120 S.W.3d at 305 (discussing the presumption that separate property is transmuted into marital property when it is re-titled in both spouses' names).

2. THE CROPS

 Like the marital home, Mr. Stidham's interest in the proceeds from the sale of the crops he raised on his mother's and others' property, in particular his fifty-percent interest in the proceeds from the sale of the crops in his possession at the time of trial, is clearly marital property.

 In general, marital property means all property acquired subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

§ 452.330.2. These exceptions must be proven by clear and convincing evidence.

*King v. King*, 66 S.W.3d 28, 36 (Mo.App. 2001). "All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property." § 452.330.3.

In his brief, Mr. Stidham has admitted that his interest in proceeds from the sales of crops are his income: "[T]he crop sales are used to finance next years' crop production and constitute income to Mr. Stidham." The trial court agreed, having found that "[t]he profit from the sale of his share crops in the field at the time of the hearing constitute portion of his annual income, as he does not operate with farm loans, does not own any land, equipment or livestock." But the court then reached the incorrect legal conclusion, namely, that "[a]ll crops in the field at the time of hearing, or profit from harvest or harvested crops still in his possession are [Mr. Stidham's] separate property and are awarded to [Mr. Stidham]." Mr. Stidham's income from crop sales, as well as his interest in the proceeds from the crops in his possession, is presumptively marital property. *Comninellis v. Comninellis*, 99 S.W.3d 502, 510 (Mo.App.2003).

Mr. Stidham implies that because Mrs. Stidham and he separated in October 2001 and the divorce petition was filed that month, his interest in the proceeds from the sale of crops after October 2001 is his separate property. Contrary to his contention, only property acquired after "a decree of legal separation or dissolution of marriage" is exempted from the presumption. § 452.330.3; *Marks v. Marks*, 618 S.W.2d 249, 252 (Mo.App.1981) ("Crops planted, cultivated, and harvested during

coverture are ordinarily marital property even if the spouses are separated."). There has never been a *decree* of legal separation in this case, and the crops in question and the proceeds therefrom were all acquired after the Stidhams' nuptials and before the marriage was dissolved. Thus, the parties' informal separation has no bearing on how to categorize the crops.

Whether the crops themselves are marital property is a distinct issue from whether Mr. Stidham's interest in the proceeds from their sales is marital property, but the outcome is the same. A long line of cases, stretching back to 1902, has held that crops, whether growing or matured, produced by a family farming operation are presumptively marital property, even if they are growing (or were grown) on nonmarital property. *Carter v. Carter,* 940 S.W.2d 12, 17 (Mo.App.1997); *Doyle v. Doyle,* 577 S.W.2d 64, 68 (Mo.App.1978) (citing *Swafford v. Spratt,* 93 Mo.App. 631, 67 S.W. 701, 702 (1902)).

Mr. Stidham makes a number of attempts, all unsuccessful, to distinguish these cases. He observes that Mr. Carter had violently attacked his wife and that Mrs. Carter contributed her own nonmarital property toward the farming operation, but these facts played no role in *Carter's* holding that the crops were marital property. Also immaterial to the identical holding in *Doyle* was the fact that the marital property was acquired as a result of the joint efforts of the parties, that Mrs. Doyle was an efficient homemaker, and that Mrs. Doyle helped in separating cattle, building grain bins and keeping farm books, and that on two occasions Mr. Doyle beat Mrs. Doyle. That Mrs. Stidham may not have contributed much toward the raising or selling of the crops in question, a disputed issue in this case, is important in determining how to apportion the value of the crops, § 452.330.1, but

irrelevant in determining whether the crops themselves are presumptively marital property. As none of the exceptions in Section 452.330.2 are applicable—nor have been raised by Mr. Stidham—this presumption leads to the conclusion that fifty-percent of the crops, like Mr. Stidham's income interest therein, are marital property.

*Marks v. Marks,* 625 S.W.2d 700 (Mo. App.1981), does not undermine this court's holding that the crops were marital property. In that case, it was claimed that the trial court erred in classifying the husband's 1978–79 farming income as his separate property. *Id.* at 701. The court rejected this argument, apparently because "[n]o accurate records were kept. The 'marital' and 'non-marital' parts of [husband's] farm income were inextricably commingled." *Id.* There was no question in this case of a commingling problem, however. The crops in Mr. Stidham's possession were never commingled with his separate property.

3. *THE LIVESTOCK*

▬▬▬ The trial court held that the livestock Mr. Stidham's raises and sells are the property of his parents and, thus, not marital property. The livestock was raised on land owned by Mr. Stidham's parents. In exchange for raising and selling the livestock, Mr. Stidham has received, since 1987 or 1988, half the proceeds of the sale, which Mr. Stidham testified were his "wages," that he deposited into the account he created in his name alone. Mr. Stidham also testified that the entire proceeds of June 2002 cattle sale was his separate property, because his father had gifted one-half the proceeds to him, but that he never owned any of the cattle.

Mrs. Stidham submits that all the cattle and the proceeds from the sales are mari-

tal property because: (1) some of the cattle were sold in Mr. Stidham's name alone; (2) Mr. Stidham deposited the proceeds into his bank account; (3) the livestock was born during the marriage; and (4) there was no documentation supporting his testimony that his father owned the cattle. None of these reasons warrant overturning the trial court's conclusion that the livestock were solely owned by Mr. Stidham's parents.

■ That an agent sells property in his own name, without revealing either the existence or identity of the principal, does not mean the agent owns the property. Here, Mr. Stidham's testimony supported the conclusion that Mr. Stidham was merely acting as his parents' agent in selling the cattle. If Mr. Stidham had deposited the entire proceeds from the cattle sales into his bank account, that might be evidence that he owned the cattle outright. But while Mrs. Stidham asserts he deposited the entire proceeds into his account, the only testimony cited on the matter (and the only testimony on the matter that this court can find) is that Mr. Stidham admitted depositing half the proceeds into his bank account.

That the livestock was born during the marriage is not dispositive. Mr. Stidham's testimony that the livestock were his parents' was sufficient for the trial court to conclude that he had no ownership interest in the cattle and, thus, that the property was neither marital nor his separate property. See In re Marriage of Kirkham, 975 S.W.2d 500, 506 (Mo.App.1998) (holding that the trial court did not err in concluding that cattle raised and sold by husband in exchange for half the proceeds was owned by his husband's mother, though the only testimony supporting conclusion was that of husband's mother). It was immaterial that there was no documentation corroborating Mr. Stidham's testimo-ny that his parents owned the cattle. There was no documentation of ownership in Kirkham, yet the court found in favor of the husband's disclaimer of ownership. In any event, Mrs. Stidham does not cite any authority for the proposition that cattle ownership must be evidenced by documentation (nor explain the absence thereof), so the argument about lack of documentation has been abandoned. See Kuehne v. State, 107 S.W.3d 285, 297–98 (Mo.App.2003).

While the cattle are not marital property, Mr. Stidham's fifty percent interest in the proceeds, like his fifty percent interest in the crop sales, are, as he put it, his "wages," that is, marital property. See supra. However, the amount traceable to Mr. Stidham's father's fifty-percent interest in the proceeds from the June 2002 sale was not marital property. The trial court was free to believe Mr. Stidham's testimony that his father gifted his interest in the proceeds to Mr. Stidham. See § 452.330.2(1). This point is sustained to the extend that fifty-percent of the proceeds from the sale of the cattle is to be deemed marital property.

### 4. "MR. STIDHAM'S" BANK ACCOUNT

■ The last categorization question is whether the bank account that Mr. Stidham opened in his name is marital or Mr. Stidham's separate property. The initial deposit of funds into the account came from the parties' joint checking account, which Mr. Stidham closed a month after Mrs. Stidham filed for divorce. Any of the funds in the account that came from the joint checking account are marital property, even if the money deposited into the joint account was originally Mr. Stidham's separate property, because the placement of separate property into a joint account creates a presumption that the property has been transmuted into marital property, a presumption that only clear and convincing evidence that no gift was intended

can rebut. *Holsman v. Holsman,* 49 S.W.3d 795, 798–99 (Mo.App.2001). Here, there was no evidence that when the parties created the joint account, Mr. Stidham intended his deposits to remain his separate property. Mr. Stidham's unilateral act of withdrawing the money from the parties' joint account and depositing it into an account in his name alone did not transform the money into his separate property.

Mr. Stidham's fifty-percent interest in proceeds of the crop and livestock sales represents wages and, thus, marital property. *See supra.* The wages deposited into "Mr. Stidham's" account are, thus, marital property. However, the fifty-percent interest from the June 2002 sale which Mr. Stidham's father gave him is Mr. Stidham's separate property, even though it was commingled with marital property. § 452.330.4 ("Property which would otherwise be non-marital property shall not become marital property solely because it may have become commingled with marital property."). Because of Mr. Stidham's commingling of marital and separate property, he bears the burden at retrial on this issue of tracing his separate funds to the money left in his deposit account. *See Drikow v. Drikow,* 803 S.W.2d 122, 126 (Mo.App.1990).

### B. Maintenance

 Mrs. Stidham claims that the trial court should have awarded her maintenance. There are two pre-conditions that must be satisfied before a trial court can award maintenance. *Adams v. Adams,* 108 S.W.3d 821, 825 (Mo.App. 2003). The spouse seeking maintenance must: (1) lack sufficient property, including marital property apportioned to the spouse, to provide for her (or his) reasonable needs; and (2) be unable to support herself (or himself) through appropriate employment. *Id.;* Section 452.335.1.

Whether to award maintenance is a discretionary decision, one that will be overturned only in the event of an abuse of discretion. *Aurich v. Aurich,* 110 S.W.3d 907, 914–15 (Mo.App.2003).

Mrs. Stidham gives many reasons why she was entitled to maintenance (e.g., that Mr. Stidham greatly understated his income and that Mrs. Stidham was a devoted, hardworking wife). Only one of these reasons addresses the trial court's conclusion that she could meet her reasonable needs through appropriate employment, to wit, Mrs. Stidham's claim that her monthly expenses exceeded her monthly gross income by around $800. Mrs. Stidham points to her first amended income and expense statement and her testimony that she was incapable of supporting herself without financial assistance from Mr. Stidham. However, the trial court did not accept Mrs. Stidham's amended income and expense statement, and Mrs. Stidham does not say why it was required to do so. The trial court wasn't required to believe her testimony about her monthly expenses or her expense statement. *Llana v. Llana,* 121 S.W.3d 286, 291 (Mo.App.2003) (holding that trial court did not abuse its discretion in awarding $2,500 and then $1,100 in monthly maintenance where spouse claimed her expenses exceeded $6,000 per month).

The trial court did not abuse its discretion in refusing to award Mrs. Stidham maintenance. This point is denied.

### C. Attorney's Fees

 Finally, Mrs. Stidham contends that the trial court erred in awarding her counsel only $1,500 in attorney's fees, around one-third of her counsel's total bill of $4,625. The award was a so-denominated sanction for Mr. Stidham's discovery abuse, namely, his failure to pro-

duce records of his livestock and crop sales until the date of trial.

■ When a party untimely produces documents properly requested during discovery, the trial court may order the non-complying party or party's counsel (or both) "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Rule 61.01(d)(4). Discovery sanctions under Rule 61.01 are reviewed for abuse of discretion. *Am. Prop. Maint. v. Monia,* 59 S.W.3d 640, 646 (Mo.App. 2001); *Hoodenpyle v. Schneider Bailey, Inc.,* 748 S.W.2d 683, 685–86 (Mo.App. 1988).

If anything, the discovery sanction in this case was excessive. Mrs. Stidham's counsel never put on any evidence of the "reasonable expenses . . . caused by" the discovery abuse, let alone that nearly one-third of her attorney's efforts were traceable to Mr. Stidham's discovery abuse. In her brief, Mrs. Stidham does not claim that the actual expenses incurred because of Mr. Stidham's discovery abuse exceeded $1,500. The trial court did not abuse its discretion in awarding $1,500 as a discovery sanction.

■ It is possible that Mrs. Stidham is challenging the trial court's denial of her petition's request for attorney's fees.[1] Even if she is, the trial court did not abuse its discretion. In a dissolution action, a trial court may order one party to pay the other party's attorney's fees. § 452.355.1. "Relevant factors for the trial court to consider in determining whether to award attorney's fees include the financial resources of the parties, their conduct during the marriage, and any unreason-

able conduct of a spouse during the dissolution proceeding that may have increased the other spouse's attorney's fees." *Kauffman v. Kauffman,* 101 S.W.3d 35, 51 (Mo. App.2003) (internal quotation marks omitted). A trial court's decision regarding attorney's fees in a dissolution action is presumptively correct and will be reversed only upon a showing of abuse of discretion. *Hatchette v. Hatchette,* 57 S.W.3d 884, 893 (Mo.App.2001). Abuse of discretion exists when the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

■ The trial court's denial of attorney's fees was neither arbitrary nor unreasonable and does not shock this court's sense of justice. Mrs. Stidham says she has zero financial resources, and also draws this court's attention to Mr. Stidham's discovery abuse. Mr. Stidham's discovery abuse is not a basis for awarding further attorney's fees: The $1,500 award more than adequately remedied whatever actual expenses were caused by Mr. Stidham's discovery abuse. The record belies Mrs. Stidham's assertions. Her income exceeds her expenses, *see supra,* and she has an IRA worth $8,537, which is double the amount of her bill. True, Mr. Stidham's income is greater than hers, but not by much. And the fact that one spouse's income is greater than the other's does not compel an award of attorney's fees. *Adams v. Adams,* 51 S.W.3d 541, 549 (Mo. App.2001). Mrs. Stidham's conduct during the marriage may have been exemplary, as she claims, but she does not say her husband's wasn't, and there was no evidence of misconduct on his part during the marriage, such as adultery or abuse.

---

1. Whether she is unclear. Her point relied on mentions the $1,500 award, but says nothing about the denial of her petition's request for attorney's fees.

*Finnical v. Finnical,* 992 S.W.2d 337 (Mo.App.1999), does not support Mrs. Stidham's claim that she is entitled to attorney's fees. In *Finnical,* the wife was awarded $3,000 in attorney's fees, though the total she owed her attorney was $17,000; the trial court did not find this total to be unreasonable. *Id.* at 344–45. Because of the "large disparity in the parties' apparent earning capacities"—Mr. Finnical averaged $160,000 per year in the three years preceding the dissolution proceeding, *id.* at 344–45, whereas Mrs. Finnical's earning capacity had not been determined (thus requiring a remand)— and because of Mr. Finnical's delay-causing failure to comply with discovery requests, this court held that the trial court erred in not awarding more attorney's fees to Mrs. Finnical. *Id.* at 345.

Here, in contrast with *Finnical,* the Stidhams' incomes were definitely comparable. *See supra.* While Mr. Stidham's discovery abuse, like Mr. Finnical's, did cause some delay, the delay was minimal. (The trial was originally supposed to start in the morning but didn't start until afternoon because Mr. Stidham's attorney brought the requested documents, and the court gave Mrs. Stidham until 1:00 p.m. to review the documents.) Moreover, the trial court sanctioned Mr. Stidham for discovery abuse, for around thirty percent of total attorney's fees, whereas there is nothing in *Finnical* saying whether Mr. Finnical was sanctioned for discovery abuse.

Given the absence of misconduct by either Mrs. Stidham or Mr. Stidham and the similarity of their earning capacities, this court cannot hold that the trial court abused its discretion in refusing to award Mrs. Stidham attorney's fees above the $1,500 it awarded as a discovery sanction. This point is denied.

The judgment of the trial court is reversed in part and affirmed in part. The judgment as it pertains to maintenance and attorney's fees is affirmed. The portion of the judgment pertaining to the determination of property and the apportionment and distribution thereof, is reversed and remanded. On remand, the trial court is to declare any value of the home to the couple be declared marital property, and fifty-percent of the proceeds of the crops and livestock be deemed marital property. The trial court, after hearing evidence shall decide if any other funds in the "Mr. Stidham" bank account are marital. All such funds or assets determined marital property shall be apportioned and distributed to the parties. Costs to be divided equally.

All concur.