In re the MARRIAGE OF Yvonne Marie THOMAS and Danny Kay Thomas.

Yvonne Marie Thomas, Petitioner–Respondent–Appellant,

v.

Danny Kay Thomas, Respondent–Appellant–Respondent.

Nos. 22787, 22810.

Missouri Court of Appeals, Southern District, Division One.

June 30, 2000.

170

W. Henry Johnson, Sims, Johnson & Wood, Neosho, for appellant.

Scott G. Taylor, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

This is a dissolution of marriage case in which both parties challenge the portion of the judgment that divides marital property.

Wife in her appeal (No. 22810) claims the trial court committed reversible error by failing to consider Husband's "substantial marital misconduct" and erred in its treatment of Husband's disability pension and certain cattle sale proceeds.

In No. 22787, Husband charges the trial court with reversible error for failing to (a) consider a certain debt in dividing property, (b) "offset" to Husband the value of nonmarital funds used to acquire marital property, and (c) divide real estate "in a logical manner."

We affirm.

## FACTS

The parties were married October 17, 1969. They separated May 12, 1997. One child born of the marriage is emancipated. Wife, born August 14, 1952, received a LPN degree in 1979, an associate degree in nursing in 1988, a bachelors degree in nursing in 1993, and a masters degree in nursing in 1996. Her post-marriage em-

ployment began in 1978 when she briefly worked as a waitress and cook at a school. After 1979, Wife worked full time for various medical care providers. At the time of trial, Wife was working full time for Freeman Hospital and weekends at a pharmacy.

Husband, born November 1, 1950, has a high school education. For the most part, he was employed as a union ironworker until December 1986. At that time, Husband sustained an on-the-job injury. As a result of this and earlier injuries, the Social Security Administration (SSA) adjudged Husband disabled within the meaning of its standards. Husband's SSA disability check started approximately December 1989. Also, the Iron Workers' union approved a monthly benefit for Husband. At time of trial, Husband's SSA check was $1059 per month and his union benefit amount was $521 per month.

At trial, Wife sought to have Husband's monthly $521.50 benefit classified as a retirement benefit, hence as marital property. Wife introduced exhibit 6, captioned "Pension Plan Assumptions," and exhibit 7, entitled "Valuation of Pension Plan Assuming Six Percent (6%) Discount Rate." By these exhibits and her testimony, Wife claimed Husband's pension was ninety-two percent marital, and that the marital portion thereof had a present value of $83,222. Husband's lawyer objected to such testimony and exhibits, claiming this represented disability payments, and thus were not marital property. Likewise, Husband testified his union benefits were granted as result of his disability and could not be considered retirement benefits.

Despite being adjudged disabled in 1986, Husband carried on a cattle farming oper-

ation thereafter. This was accomplished by doing farm business in Wife's name and listing her as the farm "proprietor" on income tax returns filed after 1987. This practice continued after separation. The proceeds from cattle sold in the post-separation period exceeded $63,000. Although the post-separation sales were made in Wife's name, she received none of the money. An issue at trial and now on appeal is whether Husband squandered or secreted all or part of the 1997–98 cattle sale money. Husband presented an exhibit comprised of numerous checks to support his testimony that the money was used to pay bills related to the farm. Contrarily, Wife pointed to checks which supported her claim that Husband used some of the money for his personal living expenses and to pay credit cards that Husband had previously agreed to pay. Moreover, Wife established that the 1997 cattle sale proceeds exceeded those of other years by over $25,000 after the separation. Husband's explanation stated "we kept 40–some head of heifers over from the year before, and we sold them in 1997."

On the first day of trial [1], Husband testified that in October 1993, he and Wife borrowed $30,330 from Rick Harber for the purpose of buying cattle. The borrowed money was deposited in Husband's and Wife's joint account and used to buy "a set of 35 two-year-old heifers." Husband testified that he and Wife borrowed another $50,000 from Harber on December 16, 1993. According to Husband, these funds were also used to buy cattle. At trial, Husband claimed they still owed approximately $75,000 on those loans. Even so, Husband did not list the Harber loans on a DR Form 1 filed before trial.[2] It was

---

1.  This case was started April 8, 1998, but was not concluded on that day. The second and final day of trial was May 29, 1998.

2.  The DR Form 1, as used in Jasper County, is captioned "Summary of Marital and Non–Marital Property and Liabilities." This is a joint form for use in a dissolution case. It requires that each party list and place a value

on all marital and nonmarital property. It also requires that the parties list their debts, i.e., to whom owed and the amount. Moreover, it requires that each party set out his or her proposed distribution of marital and non-marital property and allocation of debt responsibility. The form instructs that "[n]o case will be set until DR Form 1 or a signed Separation Agreement is filed."

after the trial started when Husband amended the DR Form 1 to include these alleged obligations. Wife, on the other hand, never mentioned the Harber debts on her part of the DR Form 1. She conceded her signature was on the Harber notes, but testified she thought there had been only one note; that the December 16, 1993, note was "basically a compilation of the October note together with additional money."

Additional facts are given when required for discussion of the parties' claims of trial court error.

## THE DECREE

Near the end of its judgment, the trial court summarized its division of marital assets and allocation of indebtedness as follows:

|  | [Wife] | [Husband] |
|---|---|---|
| Real Estate | $173,000 | $ 90,500 |
| Other Property | 42,104 | 53,385 |
|  | $215,104 | $144,085[3] |
| Less: Indebtedness | 64,758 | 97,580 |
|  | $150,346 | $ 46,505 |
| Cattle to [Husband] |  | $107,400 |
| 1997 Income tax refunds to [Wife] | 2,007 |  |
| Payment for [Husband] to [Wife] to equalize distribution | 776 | (776) |
|  | $153,129 | $153,129 |

This summary *did not* include or otherwise take into account additional rulings by the Court about which the parties complain on appeal. Specifically, the following excerpt from the judgment concerns matters which *are not* part of the above summary.

"The Court finds that [Wife] has a retirement benefit at McCune–Brooks Hospital in Carthage, Missouri that the agreed value is $8,250.49. Court awards said retirement benefit to [Wife]. Court finds that [Husband] has a pension benefit from the Iron Workers Mid–South Pension Fund which [Wife] presented testimony of value of $83,222. There

was testimony that the present benefit is a disability benefit arising from a physical injury to [Husband]. Court awards said disability benefit to [Husband]. Court also finds that [Wife] has obtained an Associates Degree in Nursing in 1988, and a B.S.N degree in 1993 ... and a Masters degree in nursing ... in ... 1996. There was no testimony as to the value of [Wife's] degree obtained during marriage. *Because the value of [Wife's] education acquired during marriage depends upon her use of the same, because the value of [Husband's] disability benefit depends upon his remaining disabled, and because [Wife] claims that [Husband] received $55,056 from sale of cattle without accounting therefore during separation of the parties, the Court makes no award for division of these matters, but considers they are offset between the parties."* (Emphasis supplied.)

Also, the trial court's debt allocation summary, i.e., $64,578 to Wife and $97,580 to Husband, does not include the alleged "Rick Harber" debt. As to that debt, the trial court ruled:

"*The court finds that there is no proven indebtedness to Rick Harber, and if there be any indebtedness to Rick Harber, it is not marital debt, and [Husband] is ordered to hold [Wife] harmless thereon.*"

These judgment excerpts, especially the italicized portions, are the object of most of the parties' points on appeal.

## STANDARD OF REVIEW

Our review is governed by Rule 84.13(d) and the principles set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *In re Marriage of Baker*, 986 S.W.2d 950, 953 (Mo.App.1999).[4] Thus, we must affirm the judgment of the trial court unless it is not

---

**3.** We have accurately reproduced what is in the decree, including the error in addition.

**4.** In *Baker* our standard of review was set out in Rule 73.01(c), whereas the current version thereof is Rule 84.13(d) (2000).

supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1].

### WIFE'S APPEAL—NO. 22810

Wife's single point relied on, albeit with four sub-parts, charges the trial court with reversible error in its division of marital property. In sub-part C, Wife challenges the division of marital property on the ground that the trial court "failed to value as a marital asset and divide [Husband's] disability pension benefits[,]" thus making the division "weighted unfairly in favor of [Husband]." Wife relies on *In re Marriage of Berger*, 950 S.W.2d 307, 311 (Mo.App.1997), to argue that the disability pension benefits are marital property.

Wife's reliance on *Berger*, is misplaced however, as it dealt with *nondisability* retirement benefits. Neither *Berger* nor other cases that apply the same principle compel a court to treat a *disability* benefit as marital property. To the contrary, in *Mistler v. Mistler*, 816 S.W.2d 241 (Mo.App., 1991) this court concluded that Missouri courts prefer a "replacement analysis in the application of § 452.330 to decide whether property such as ... disability payments ... are marital or non-marital." *Id.* at 249[2]. A "replacement analysis" or "analytic approach" means that trial courts classify disability benefits as marital or nonmarital after determining what they replace. *Id.* at 248. Thus, if disability payments are merely a substitute for earnings lost due to the recipient's inability to work, they are the same as post-dissolution earnings and are nonmarital property. *See Sherman v. Sherman*, 740 S.W.2d 203, 207 (Mo.App.1987).

Wife, in her brief, characterizes Husband's $521.50 monthly check as a "disability pension benefit." Consequently, the analysis of *In re Marriage of Medlock*, 749 S.W.2d 437 (Mo.App.1988) is dispositive, i.e., "[t]he term 'disability' ... connotes money representing lost earnings occasioned by an inability to work, declared nonmarital property in *Sherman*." Based on *Sherman* and *Medlock*, we find no error in the trial court's failure to classify Husband's disability payments as marital property and its refusal to divide the same. Point I(C) denied.[5]

In sub-part B, Wife challenges the division of marital property on the grounds that the trial court failed to include as marital property sums of money that Wife says were dissipated after separation and prior to trial. Wife says reversible error occurred when the court "acknowledged" Husband received "substantial money" from cattle sales during the separation *"without accounting therefore* [sic]," yet "failed to consider the depletion and squandering of the marital estate when dividing the marital assets and failed to provide [Wife] with credit for the dissipation of marital assets by [Husband.]"

As Wife correctly points out, a trial court may order reimbursement of squandered or secreted marital property or include such assets as part of the marital property. However, the court opinions cited by Wife[6], and other opinions that apply

---

5. In the argument part of her brief, Wife cites *Ludwinski v. Ludwinski*, 970 S.W.2d 892, 894 (Mo.App.1998) and *Holt v. Holt*, 976 S.W.2d 25, 29 (Mo.App.1998). These cases hold that even though retirement benefits such as Social Security and teacher's retirement are unassignable as marital or separate property, they nevertheless are economic factors to be considered, along with other factors, in dividing marital property. Wife argues that disability benefits are analogous, and accordingly, the court erred when it failed to address that issue and merely set off Husband's disability benefits against Wife's education. This argument is not, however, encompassed within in Wife's point relied on. Appellate courts are obliged to decide only those issues raised in points relied on. *See In re Marriage of Flud*, 926 S.W.2d 201, 206[6] (Mo.App.1996). Issues to which an appellant alludes only in the argument part of his or her brief are not preserved for review. *Id.* at 202[7]. We do not consider this argument as it has been abandoned.

6. Wife relies on *Schneider v. Schneider*, 824 S.W.2d 942 (Mo.App.1992); *Hogrebe v. Hogrebe*, 727 S.W.2d 193 (Mo.App.1987), *Ned-*

the same principle, do not compel a trial court to take the action Wife now urges, i.e., "provide [Wife] with credit" for Husband's alleged dissipation of $63,825.77 received from the sale of cattle after separation and during the pendency of the case. *See Mistler,* 816 S.W.2d at 253.

In the cases relied on by Wife, appellate courts affirmed trial court decrees that either ordered one party to reimburse squandered assets or adjusted the marital property division because one spouse dissipated assets. In *Hogrebe,* the reviewing court examined the records and concluded there was "substantial evidence" to support the trial court's conclusion that appellant had dissipated assets. 727 S.W.2d at 197. It is clear from reading *Schneider,* 824 S.W.2d at 947, *Nedblake,* 682 S.W.2d at 856, and *Bland,* 652 S.W.2d at 692, that those courts concluded the evidence in the respective records supported the trial courts' findings that the appellant in each case had secreted or squandered marital property. In the case before us, there was no finding, explicit or implicit, of dissipation. Thus, *Schneider, Hogrebe, Nedblake* and *Bland* do not aid Wife.

In reaching this conclusion, we do not ignore Wife's point I(B) claim that the trial court "acknowledged [Husband] had received substantial money from the sale of cattle during the separation of the parties, without accounting therefore [sic]." This mischaracterizes the trial court's judgment recitals. As we view it, the trial court in its finding was merely repeating or summarizing Wife's claims on this subject.

■ Moreover, Wife's argument has another shortcoming as it ignores the teaching of numerous cases that a finding of secretion or squandering does not compel a trial court to order some form of reimbursement. *See, e.g., Cofer v. Price–Cofer,* 825 S.W.2d 369, 374[2] (Mo.App.1992); *Mistler,* 816 S.W.2d at 253[12]. Had the trial court found dissipation and failed to

order reimbursement, this court's review would be limited to an inquiry into whether the trial court abused its discretion. *See Cofer,* 825 S.W.2d at 374. We have looked closely at Husband's testimonial and documentary explanation of what he did with the post-separation cattle sale proceeds, and we find no abuse of trial court discretion in its failure to order reimbursement or include such assets as part of the marital property. Although Wife complains Husband's explanation on how he spent the cattle sale proceeds was not credible, we will not interfere with the trial court's responsibility to weigh the probative value of the evidence. *Id.* Point I(B) is denied.

We reproduce the pertinent portions of Wife's point I(D) as follows:

"THE TRIAL COURT COMMITTED ERROR IN DIVIDING PROPERTY BECAUSE ...

"D. ALTHOUGH THE COURT CORRECTLY DECLARED THAT [WIFE'S] ADVANCED EDUCATION DEGREE WAS NOT MARITAL PROPERTY, THE COURT WENT ON TO ADD THAT [HUSBAND] WAS ENTITLED TO CREDIT FOR SAID EDUCATIONAL DEGREE AND POTENTIAL INCREASED EARNING CAPACITY WHEN THE COURT SET ASIDE TO [HUSBAND] THE PROCEEDINGS FROM THE SALE OF CATTLE DURING THE SEPARATION AND THE IRONWORKER'S PENSION FUND RESULTING IN AN UNFAIR DISTRIBUTION OF MARITAL ASSETS."

As Wife states in this sub-point, the trial court correctly concluded that Wife's education degrees were not marital property as defined in § 452.330.3; consequently, they were not subject to division under

*blake v. Nedblake,* 682 S.W.2d 852 (Mo.App. 1984); and *Bland v. Bland,* 652 S.W.2d 690

(Mo.App.1983).

§ 452.330.1.[7] *See Riaz v. Riaz,* 789 S.W.2d 224, 227 (Mo.App.1990). This follows because any attempt to value and divide an education degree is actually an attempt to value and divide the degree holder's future earning capacity, *Rapp v. Rapp,* 789 S.W.2d 148, 152[14] (Mo.App.1990), and future earning capacity is not marital property. *Hanson v. Hanson,* 738 S.W.2d 429, 435 (Mo.banc 1987).

■ Our resolution of sub-points (B) and (C) answers Wife's claims of trial court error raised in sub-point (D). Having found no trial court error in its failure to classify Husband's disability payments as marital property or its refusal to treat post-separation cattle sale proceeds as marital property or order reimbursement, we cannot convict the trial court of reversible error because of its "offset" ruling. In a dissolution of marriage case, we affirm a trial court's judgment if the result was correct on any tenable basis. *See Koon v. Koon,* 969 S.W.2d 828, 831[4] (Mo.App. 1998). Point I(D) is denied.

■ Wife's point I(A) maintains the trial court committed reversible error in dividing marital property because the court failed to consider Husband's "substantial marital misconduct during the marriage, including misconduct after … separation …, which put an undue burden on [Wife.]"

The Dissolution of Marriage Act consigns the division of marital property to the sound discretion of the trial court. *In Re Marriage of Gourley,* 811 S.W.2d 13, 15 (Mo.App.1991) (citing *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo.banc 1983)). This court must defer to the trial court's marital property division unless the division is improper under the principles of *Murphy v. Carron,* 536 S.W.2d at 32, or an abuse of discretion is shown. *McKee v.*

*McKee,* 940 S.W.2d 946, 951 (Mo.App. 1997). We presume the correctness of the division of marital property; on appeal, the party challenging the division has the burden of overcoming the presumption. *Id.* at 951[9].

■ A trial court's division of marital property must be fair and equitable and take into account the factors enumerated in § 452.330.1.[8] *Mistler,* 816 S.W.2d at 252[8].

Here, two of the factors in § 452.330.1 may be disposed of summarily. The nonmarital property factor, § 452.330.1(3), is *de minimis;* the nonmarital assets of each party consisted of personal property and were inconsequential when compared to the marital property awarded each party. The child custody factor, § 452.330.1(5), is irrelevant to the facts of this case.

The record is sparse regarding the contribution of each party to the acquisition of marital property, § 452.330.1(2). Evidence exists that Husband was the only family wage earner until 1977. Beginning in 1977, both parties contributed income of varying amounts. After Husband began receiving disability checks in 1988, his income contribution was fixed, whereas Wife's income contribution gradually increased so that it exceeded Husband's at the time of trial. There is also evidence that Wife contributed as a homemaker. Contrarily, evidence exists that not all of Wife's income went toward acquisition of marital assets; some was used for her education. Husband also claims to have contributed a $28,000 inheritance and a $17,000 workers' compensation settlement to the acquisition of marital real estate.

When considering the economic circumstances factor, § 452.330.1(1), the trial court was entitled to consider each party's

7. All statute references are to RSMo 1994 unless otherwise indicated.

8. Under § 452.330.1, a trial court must consider (1) the economic circumstances of each spouse at the time the division of property is to become effective, (2) the contribution of each spouse to the acquisition of marital property, (3) the value of each party's nonmarital property, (4) the conduct of the parties during marriage, and (5) custodial arrangements for minor children.

capacity to work and earn. *See Cofer,* 825 S.W.2d at 375[10]; *Mistler,* 816 S.W.2d at 252. The trial court had before it evidence of Wife's enhanced capacity to work and earn due to the education she acquired. On the other hand, there was evidence of Husband's diminished capacity to work and earn because of his disability. Although the record is silent on how the trial court weighed this evidence, we assume it considered the parties' respective earning capacity when it divided the property. *See Cofer,* 825 S.W.2d at 375[10].

To support her argument that the trial court neglected to consider the "conduct of the parties" factor, § 452.330.1(4), Wife directs us to evidence of Husband's alcohol abuse, physical and sexual abuse of Wife, and interference with Wife's efforts to obtain education and continued employment. Wife also points to her testimony of alleged post-separation misconduct by Husband, i.e., he shot her cat and "dissipated substantial value of marital cattle."

■ In making this argument, Wife ignores Husband's testimony regarding the parties' conduct. For instance, Husband specifically denied he ever hindered Wife's educational and employment pursuits. With one exception, Husband denied he ever physically or sexually abused Wife. According to Husband, the exception occurred during an incident when he took a gun from Wife. Husband testified he had never drunk alcohol to the point of unawareness, he stopped drinking after his injury in 1986, and alcohol had "never been an issue" between Wife and him after 1986. Husband put in evidence an "acknowledgement" written by Wife and a certificate signed at the completion of her masters thesis. In those documents Wife lauded Husband for the support, love, understanding, and guidance he had given her, "without which my graduation would not have been possible." Husband also denied Wife's claim that he squandered assets after their separation and insisted the questioned cattle sale proceeds were used to pay farm expenses. Both Husband and Wife admitted sexual infidelity during the marriage. In resolving conflicting evidence regarding spousal misconduct during a marriage, a trial court is free to believe all, part, or none of the testimony of any witness. *Crews v. Crews,* 949 S.W.2d 659, 665[12] (Mo.App.1997). Wife apparently would have this court ignore the trial court's authority to make credibility assessments when she argues that her "misconduct" evidence and the trial court's "fifty-fifty" property award compels us to convict the trial court of failing to consider the "conduct" factor. We reject that notion. The trial court was entitled to believe all Husband's testimony on this subject and believe none of Wife's evidence. *Id.*

■ Moreover, we find nothing in the record to indicate the trial court failed to properly take into consideration the "conduct" factor, § 452.330.1(4). As a reviewing court, we assume the trial court considered all the evidence when it divided the marital property. *In Re Marriage of Baker,* 986 S.W.2d at 957[14]. The record supports that presumption here. No formula exists respecting the weight a trial court should give the relevant factors. *McKee,* 940 S.W.2d at 951.

Here, the court could have given the "economic circumstances" factor more weight because of Wife's superior earning ability. It could have weighed the "contribution" factor favorably to Husband due to his contribution of his inheritance and workers' compensation settlement. The court could have given less weight to the "conduct" factor because of the conflicting evidence. In any event, regardless of the weight the trial court did assess to the misconduct evidence, misconduct is but one factor that is weighed with the other factors in the § 452.330.1 analysis. Thus, we cannot find the trial court erred in dividing property because of an alleged failure to consider Husband's conduct. Point I(A) is denied.

HUSBAND'S APPEAL—NO. 22787

In the argument following Husband's point E, he complains about the trial court's treatment of the Harber debts. Specifically, Husband argues "the failure [by the trial court] to properly identify and consider the character of [the Harber debt] caused the Trial Court [to] abuse[ ] it's [sic] discretion and commit[ ] error in it's [sic] ultimate distribution of Marital Property."

█ In Wife's response to Husband's point E, she asserts—correctly so—that Husband's point relied on has *nothing* to do with the complaints Husband makes in the argument following point E.[9] She urges that we not address Husband's point E because of this briefing deficiency, i.e., advancing an issue in the argument part of his brief that was not identified in his point relied on. *See Berger v. Huser,* 498 S.W.2d 536, 539[2] (Mo.1973); *Flud,* 926 S.W.2d at 206[7]. Wife concedes, however, that from the argument part of Husband's brief she understood Husband's complaint, i.e., the trial court erred by not designating Harber's debt as a marital debt. We detect no prejudice to Wife as a consequence of Husband's briefing mistake; consequently, we gratuitously move on to the merits of the point.

█ Marital debts are debts incurred after marriage or in contemplation of marriage. *In re Marriage of Welch,* 795 S.W.2d 640, 643[1, 2] (Mo.App.1990). So defined, the Harber debts—if they exist—are clearly marital as they were incurred after marriage. The trial court erred when, in its alternative finding, it suggested otherwise. It is this error that Husband seizes on to urge reversal.

█ The fallacy in Husband's argument is it ignores the trial court's principal finding about the alleged Harber indebtedness, i.e., *"there is no proven indebtedness to Rick Harber."* Clearly, the trial court did not believe Husband's evidence that he and Wife still owed Harber money at the time of trial. This was the trial court's prerogative. *See Panettiere v. Panettiere* 945 S.W.2d 533, 543 (Mo.App.1997) (holding whether a debt existed was purely a fact question, heavily dependent on the trial court's decision on the credibility of witnesses). Issues such as credibility of witnesses are for the trial court to resolve and are not matters that appellate courts can review. *Choate v. Natvig,* 952 S.W.2d 730[15] (Mo.App.1997). A trial court is free to believe none, part, or of all of a witness's testimony. *Dukes v. Dukes,* 859 S.W.2d 264, 268[4] (Mo.App.1993). A trial court may disbelieve testimony even when it is uncontradicted. *Matter of T.A.P.,* 953 S.W.2d 638, 642[8] (Mo.App.1997).

█ Here, the trial court's finding of "no proven [Harber] indebtedness" provides a tenable basis for its resolution of the Harber debt issue; consequently, any error in its alternative finding is not grounds for reversal.[10] *See Mistler,* 816 S.W.2d at 250[4]. Moreover, Husband's point relied on does not claim that the court's "no proven indebtedness" finding is unsupported by substantial evidence or against the weight of the evidence; conse-

---

9. Husband in his reply brief offers this explanation:

"A clerical error was made and Point Relied Upon D was duplicated in Point Relied Upon E. [Husband] intended to argue:

"E. THE COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO CONSIDER THE PROMISSORY NOTE TO RICK HARBER IN ITS ALLOCATION OF MARITAL PROPERTY. SUFFICIENT EVIDENCE WAS PRESENTED TO ESTABLISH THIS AS A MARITAL DEBT, SAID DEBT CONSISTED OF APPROXIMATELY $70,000 AND THE PROPERTY DIVISION OF THE COURT WAS NOT FAIR AND EQUITABLE BASED UPON THE EVIDENCE."

10. Any doubt about the trial judge's decision that Husband lacked credibility on this issue is allayed in another part of the record when he said: "[T]he Court doesn't ... even believe it's proven as a debt." Continuing, the trial judge said: "I don't believe the testimony, even if it is a debt, and if it is, then ... it's the husband's responsibility."

quently, the issue is deemed abandoned. *See Dycus v. Dycus*, 806 S.W.2d 750, 752[1] (Mo.App.1991). Point E is denied.[11]

Defendant's points F and G read:

"F. THE TRIAL COURT ERRED BY FAILING TO OFFSET TO [HUSBAND] THE VALUE OF HIS NON-MARITAL FUNDS WHICH WERE USED IN PART TO ACQUIRE MARITAL PROPERTY.

"G. THE TRIAL COURT ERRED BY FAILING TO DIVIDE THE TRACTS OF LAND IN A LOGICAL MANNER SO THAT [HUSBAND] COULD USE THE LAND FOR GRAZING AND GROWING HAY FOR THE CATTLE AWARDED TO [HUSBAND]."

Each point relied on in an appellant's brief shall "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1). "The requirements of Rule 84.04(d) are mandatory." *Carroll v. AAA Bail Bonds*, 6 S.W.3d 215, 217[7] (Mo.App.1999). These points do not comply with Rule 84.04(d)(1)(B) or Rule 84.04.(d)(1)(C). As framed, these points are little more than abstract statements of law, and "[a]bstract statements of law, standing alone, do not comply with this rule." Rule 84.04(d)(4). See also *Carroll*, 6 S.W.3d at 218.

We also note that Defendant's point G is without citation to relevant case authority. Defendant's brief does not state that citations of authority are un-

available. A point of error left unsupported by citation of relevant authority need not be considered. *Tindall v. Holder*, 892 S.W.2d 314, 327 (Mo.App.1994).

Compliance with Rule 84.04(d) is discussed at length in numerous Missouri appellate court opinions, including *Thummel v. King*, 570 S.W.2d 679 (Mo.banc 1978), and *Midwest Materials Co. v. Village Development Co.*, 806 S.W.2d 477, 483 n. 1. (Mo.App.1991). The policy underlying the requirements of Rule 84.04(d) is set out in *Thummel*, 570 S.W.2d at 686[6–7].

With exceptions not relevant here, "failure to substantially comply with Rule 84.04 preserves nothing for appellate review." *Libberton v. Phillips*, 995 S.W.2d 66, 67[4] (Mo.App.1999). Moreover, "allegations of error ... not properly briefed shall not be considered in any civil appeal." Rule 84.13(a).

We decline to exercise the discretionary authority granted us by Rule 84.13(c) to examine the argument portion of Plaintiffs' brief or the record on appeal in search of plain error regarding Husband's points F and G.

We affirm the judgment of the trial court.

CROW, P.J., and PARRISH, J., concur.

---

**11.** We reject Husband's argument that we should consider and use Exhibit A attached to his post-trial motion (but not introduced at trial) to decide that the trial court erred when it found the Harber debts were non-existent. With only a few exceptions, which are not applicable here, appellate courts do not look to pleadings as evidence. *In re McDonald Revocable Trust*, 942 S.W.2d 926, 933[14] (Mo.App.1997). This is not a summary judg-ment matter where Wife might be held to have notice via Rule 74.04 that pleadings, affidavits, or other filings should be considered as evidentiary material. *See Sturgeon v. State Bank of Fisk*, 616 S.W.2d 578, 581[2] (Mo.App.1981). For us to treat Exhibit A as evidence on appeal without Husband having offered it would deprive Wife of her opportunity to present objections to the exhibit and challenge its admission into evidence.