**In re the MARRIAGE OF Larry Wayne CRANOR and Gay Nell Cranor.**

**Larry Wayne Cranor, Respondent,**

v.

**Gay Nell Cranor, Appellant.**

**No. 24125.**

Missouri Court of Appeals, Southern District, Division One.

April 25, 2002.

Rehearing Denied May 17, 2002.

---

2. *Compare Reardon*, 388 S.W.2d at 58 (evenings and Sundays).

**152**

Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for appellant.

Christina L. Kime, L. Dwayne Hackworth, Hackworth, Kime & Hackworth, Piedmont, for respondent.

KERRY L. MONTGOMERY, Judge.

In this dissolution of marriage case, Gay Nell Cranor (Wife) challenges the division of property acquired during her marriage to Larry Wayne Cranor (Husband) and the denial of her request for maintenance. On appeal, Wife raises two primary allegations of trial court error. First, she contends the trial court misapplied the law in characterizing Husband's disability retirement as non-marital property and failing to set aside a portion to her. In her second point, Wife challenges the sufficiency of the evidence to support the trial court's denial of her request for maintenance.

The parties were married June 1, 1969. Shortly thereafter, Husband was drafted by the army and served twelve months in Vietnam where he saw actual combat. As a result of his service in Vietnam, he was diagnosed with post-traumatic stress disorder. He suffers from depression, memory loss, and insomnia.

Husband returned to the United States in 1971. A short time later he began working for the United States Postal Service (USPS). Husband worked for USPS for twenty-seven years. During this time, Husband contributed approximately $45,000 to his retirement account through payroll deductions. Including his year of service in Vietnam, Husband has accumulated twenty-eight-and-a-half years of federal service. Husband and Wife were married during Husband's entire term of employment with USPS.

After thirty years of marriage, Husband and Wife separated in June of 1999. Husband filed a petition for dissolution of the marriage in July of 1999. Six months after Husband filed for dissolution, the United States Office of Personnel Management (OPM) approved Husband's application for disability retirement benefits. At this time, Husband was 50 years and six months old. OPM based its approval of Husband's disability retirement benefits on his diagnosis of post-traumatic stress disorder stemming from his year of service in Vietnam.

On July 19, 2000, the trial court held a hearing on Husband's petition for dissolution. The evidence showed that the primary marital asset was a three-bedroom home in which the parties had lived for approximately ten years. The home was valued at $78,000 to $80,000 with a debt against it of $12,316. At the time of the hearing, Wife was residing in the marital residence and Husband was residing in a rented apartment.

At that time, Husband was paying Wife $435 per month in support pursuant to a temporary order. Husband claimed his monthly income, including the funds received from his disability retirement, totaled $2,029.29. He maintained his monthly expenses totaled $2,431. Wife testified that she was employed as a nurse by Bap-

tist Bible College Health Services. Her salary was $20,951 annually, or $1,419.66 each month. Wife contended that her reasonable expenses amounted to $1,855 per month. Wife argued she was entitled to maintenance because she could not meet her expenses through her employment.

After hearing the evidence, the trial court entered judgment on January 9, 2001. In its findings, the trial court concluded that Husband's disability retirement benefits were his non-marital property and therefore were not subject to division. The court noted that "the value of the non-marital property awarded to [Husband] does significantly impact the overall division of the marital property and debt" and awarded Wife the marital home.

After setting aside the parties' non-marital property and dividing the marital property, the trial court addressed Wife's request for maintenance. The court determined that Wife was only employed full-time for the nine-month term of the school year and imputed income to Wife for the remaining three summer months. The court concluded that Wife was capable of being self-supporting and denied her request for maintenance.

■ Wife's first point contends that the trial court erred in dividing the marital property because it misclassified the disability retirement benefits as Husband's non-marital property. Wife maintains the trial court erroneously applied or declared the law when classifying the retirement benefits because the evidence showed that the retirement benefits were based upon contributions from marital funds and were intended to provide retirement support rather than to replace lost wages. Therefore, Wife contends the division of property was inequitable.

■ Appellate review of the classification of property in a dissolution action is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Thomas*, 21 S.W.3d 168, 172–73 (Mo.App.2000).

■ Missouri follows an "analytical approach" to determine whether awards or benefits are properly classified as marital or non-marital property. *Hudson v. Hudson*, 865 S.W.2d 405, 407 (Mo.App.1993). Under this approach, the focus is on what the benefits are intended to replace. *Pauley v. Pauley*, 771 S.W.2d 105, 109 (Mo. App.1989). Therefore, "if disability payments are merely a substitute for earnings lost due to the recipient's inability to work, they are the same as post-dissolution earnings and are nonmarital property." *Thomas*, 21 S.W.3d at 173. Conversely, pension or retirement benefits that merely act as deferred compensation for past services are considered marital property to the extent they were acquired during the marriage. *In re Marriage of Medlock*, 749 S.W.2d 437, 441 (Mo.App.1988).

A federal service employee who becomes disabled may be entitled to benefits under either of two plans under the Civil Service Code, 5 U.S.C.A.[1] Compensation for workplace injuries for postal employees is addressed in chapter 81 of 5 U.S.C.A. The amount of compensation for a workplace injury is based upon the degree, nature, and duration of the resulting disability. Compensation payments are made from the Employees' Compensation Fund, which is funded by Congress. 5 U.S.C.A.

1. Federal statute references are to U.S.C.A.

(1996 & Supp.2001).

§ 8147. Husband's disability did not occur in the performance of his postal duties. Thus, chapter 81 of 5 U.S.C.A. does not apply.

However, chapter 83 of 5 U.S.C.A. governs the retirement of USPS employees, including those retiring based upon a disability. Husband qualified for disability retirement under this portion of the Civil Service Code. Under chapter 83, an eligible employee may opt for retirement benefits under one of three classifications: immediate retirement, deferred retirement, and disability retirement. There are separate requirements for the vesting of retirement benefits under each classification.

Immediate retirement covers numerous scenarios, each of which entitles a civil service employee to an annuity. For example, an employee who has completed 25 years of service or who has reached 50 years of age and has completed 20 years of service qualifies for immediate retirement and is entitled to an annuity. 5 U.S.C.A. § 8336(j)(1)(A)(i). A postal employee who has completed five years of service and has reached the age of 62 may opt for an annuity under deferred retirement if the employee is separated from the service or transferred to a position in which he does not continue. 5 U.S.C.A. § 8338(a). Finally, a postal employee may opt for disability retirement if the employee has completed five years of service and has become disabled. 5 U.S.C.A. § 8337(a).

Annuities for immediate, deferred, and disability retirement are all paid from the same fund. The fund, unlike the Employees' Compensation Fund, is financed primarily by contributions deducted from the employees' pay, as permitted by 5 U.S.C.A. § 8334. Husband contributed almost $45,000 to his retirement fund through payroll deductions.

Husband elected to retire under the "disability retirement" provisions of 5 U.S.C.A. § 8337. As such, Husband receives an annuity based on the highest average salary of any three-year period in which he was employed by the USPS. This calculation is the same regardless of which section triggers the benefits. Following this formula, OPM calculated his monthly disability retirement benefit to be $1,011.29

Both parties concede that Missouri courts have never addressed the issue of whether post-dissolution benefits from a federal civil service disability annuity are subject to distribution as marital property. The trial court ruled that Husband's disability retirement benefits were non-marital property because they are compensation for loss of future earning capacity rather than compensation for past services.

In support of its ruling, the court cited a letter from OPM, which stated that until Husband reaches the age of 60 he may be required to submit evidence to demonstrate that his disabling condition is ongoing. If Husband's condition is no longer disabling, his annuity payments will cease one year from the date of the medical examination on which the action is based.

The trial court also relied upon *Hudson*, 865 S.W.2d at 405, for the proposition that Husband's civil service disability retirement is properly classified as non-marital. In *Hudson*, the husband was a member of the Sprinkler Fitters Union and had two assets, a Supplemental Fund and a Pension Fund, both of which were administered by The National Automatic Sprinkler Union. *Id.* at 406. The benefits were a result of his employment with the Union. *Id.* He suffered a hernia injury and was unable to continue work as a steam fitter with the Union. *Id.* at 407.

The issue in *Hudson* was whether the benefits in the Supplemental Fund were marital or non-marital property. *Id.* The *Hudson* court held that the benefits from the supplemental fund were non-marital because they would compensate the husband for lost future earning ability. *Id.* at 408.

*Hudson* can be distinguished from the present case because the benefits were separated into two funds. One fund was designated as "pension" and other designated as "supplemental." Use of the supplemental fund could be triggered by three separate contingencies: (1) if the employee became unable to perform Union work, (2) left the Union, or (3) retired. *Id.* at 407. Husband was not eligible to receive funds from his pension fund until he was 65. *Id.* Clearly, the Union intended to have a separate fund to compensate Union members if serious injury left them unable to perform Union work.

In the instant case, Husband was qualified to take an immediate retirement annuity based upon his twenty-seven years of service. The annuity he receives was earned during his years of service and funded through payroll deductions like any other retirement pension. Under civil service retirement rules, disability was one of several possible conditions that would trigger the right to retirement benefits. If we were to accept Husband's argument, he would be able to deprive Wife of her interest in the annuity simply by electing to retire under disability retirement instead of immediate retirement.

"Retirement benefits are frequently the most valuable asset belonging to a married couple." *Conaway v. Conaway,* 899 S.W.2d 574, 576 (Mo.App.1995). As the Supreme Court of Rhode Island noted when addressing a similar issue, "[O]ne spouse should not be allowed to defeat the other spouse's interest in an asset earned and accumulated during the marriage by invoking a condition wholly within his or her control." *Allard v. Allard,* 708 A.2d 554, 558 (R.I.1998).

We believe the trial court classified the retirement benefits as non-marital based upon the "disability retirement" label under 5 U.S.C.A. § 8337, rather than the true character of the benefits. It is true that to continue receiving "disability retirement" Husband must remain disabled according to OPM's guidelines. However, Husband had also met the service requirement to receive benefits under immediate retirement pursuant to 5 U.S.C.A. § 8336(j)(1)(A)(i) because at the time he was separated from the service he had completed twenty-seven years of service and reached the age of 50 years. Nothing in the record indicates that if OPM determines Husband has recovered that he could not simply elect an immediate retirement based upon his years of service.

If Husband had taken an immediate retirement, Wife would be entitled to a portion of those benefits as martial property because they would be a form of deferred compensation funded by money earned during the parties' marriage. *Tate v. Tate,* 920 S.W.2d 98, 104 (Mo.App.1996). If Husband and Wife had accumulated funds in almost any other type of retirement account from income earned during their marriage, such funds would be subject to distribution as marital property. *In re Marriage of Box,* 968 S.W.2d 161, 164 (Mo.App.1998).

Husband argues that even if we find a portion of the annuity is compensation for past services and therefore subject to division as marital property, the benefits must be classified as non-marital to the extent they represent Husband's disability or reduced earning potential in the future. We agree. Husband's annuity is a hybrid, with both a "disability" and a "retirement"

component. We find that the majority of Husband's retirement benefits stem from marital funds and are intended to compensate him for past services. Therefore, that portion of the benefits should have been subject to division as marital property.

However, to the extent that Husband's benefits exceeded that which he would have received if he had opted for benefits under immediate retirement, they are his non-marital property. Section 8339(h) provides that when an employee retires pursuant to the immediate retirement provisions of 5 U.S.C.A. § 8336, the employee's annuity is reduced by one-sixth of one percent for each full month the employee is under the age of 55. Husband was 50 years and six months old at the time of retirement. Accordingly, the amount of Husband's retirement benefits that exceed the amount he would have been entitled to if he had opted for immediate retirement represent earnings lost by his inability to work due to his disability and are his non-marital property.

Point I has merit. We reverse that portion of the judgment dividing the marital property and finding that Husband's retirement benefits were non-marital property. Upon remand, the trial court is instructed to determine what portion of the benefits exceed the amount Husband would have been entitled to if he had opted for immediate retirement and to set that amount aside as Husband's non-marital property. The remainder of the retirement benefits shall be deemed marital property, and the trial court shall divide the marital property in accordance with the factors set forth in § 452.330.1.

■ In her second point, Wife maintains the trial court erred in denying her claim for maintenance because there was insufficient evidence to show that she could meet her monthly needs. Wife contends the trial court based its denial upon its erroneous conclusion that she was only employed nine months of the year and its subsequent imputation of income for the remaining three-month period.

■ A trial court has broad discretion in determining whether to award maintenance. *In re Marriage of Thompson*, 24 S.W.3d 751, 754 (Mo.App.2000). On review for abuse of judicial discretion, we look to whether the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 754–55. Where reasonable people can differ about the propriety of the trial court's action, it cannot be said the trial court abused its discretion. *Id.* at 755. "An appellant has the burden of overcoming a strong presumption that a trial court's maintenance award is correct." *Id.*

■ The award of maintenance is governed by § 452.335. According to that statute, the threshold question in deciding if a spouse is entitled to maintenance is whether the party seeking maintenance can meet his or her reasonable needs through property or employment. *Id.* at 754. Therefore, we will sustain the denial of a request for maintenance where the evidence shows the spouse requesting maintenance can meet his or her reasonable needs through appropriate property or employment. *Id.*

The evidence at trial indicated that Wife was a registered nurse. After leaving nursing school, Wife was employed by St. John's Hospital and earned $18.75 per hour. At the time of the trial, Wife was employed by Baptist Bible College Health Services and earned $20,951 yearly. She worked at the school five days a week during the school year and one day a week during the summer. Wife testified that

she did paperwork at home during the remainder of the week in the summer.

The trial court found that, based upon Wife's education and work experience, she could earn $1,773.92 per month if using her best efforts. The court then looked at Wife's income and expense statement to calculate her reasonable monthly expenses and determined that Wife was capable of meeting her needs by being employed to the extent of her qualifications.

Wife contends that the trial court abused its discretion in finding that she had not maximized her earning capacity because she was currently only employed full-time during nine months of the year. She argues the trial court erred in imputing income for the remaining three months of the year and using this as the basis to find she could meet her reasonable needs through employment.

■ A trial court may impute income to a spouse based upon what he or she could earn using his or her best efforts to gain employment suitable to his or her capabilities. *Finnical v. Finnical*, 992 S.W.2d 337, 341 (Mo.App.1999). "'Appropriate employment' is employment 'appropriate to [a person's] skills and interests.'" *Id.* (quoting *Witt v. Witt*, 930 S.W.2d 500, 504 (Mo.App.1996)).

■ Wife argues that there was no evidence to contradict her testimony that she was a full-time employee year-round nor to show that she was capable of earning more than her current job paid. However, a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness, even if uncontradicted. *In re Marriage of Thompson*, 24 S.W.3d at 755. Furthermore, the evidence reflected that Wife had the education and occupational skills to gain full-time employment and that at one time during her nursing career she earned more than enough to meet her current expenses. Based upon our standard of review, we cannot say the trial court abused its discretion in determining that Wife was capable of meeting her reasonable needs through employment and in denying Wife's request for maintenance. Point II is denied.

The judgment of the trial court regarding the division of marital property and the classification of Husband's retirement benefits is reversed. The cause is remanded with instructions to enter judgment consistent with this opinion as to the division of marital property and Husband's retirement benefits. The trial court, in its discretion, is authorized to hear additional evidence on this issue. All other portions of the judgment are affirmed.

SHRUM, P.J., and BARNEY, C.J., concur.