Sandra Ray COFFMAN, Respondent,

v.

Elvin Cale COFFMAN, Appellant.

No. WD 66204.

Missouri Court of Appeals,
Western District.

Feb. 27, 2007.

Dennis J. Campbell Owens, Kansas City, MO, for appellant.

David Slaby, Nevada, MO, for respondent.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE, Judge, and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Elvin Coffman ("Husband") appeals from a judgment entered in the Circuit Court of Bates County dissolving his marriage to Sandra Coffman ("Wife"). Specifically, Husband challenges the trial court's finding that Husband's benefit payments from the General Motors pension fund, for which he was eligible as a result of being determined permanently and totally disabled, should be categorized as marital property. For the following reasons, we reverse and remand for further proceedings.

Husband and Wife were married on March 28, 1982,[1] and subsequently resided in Hume, Missouri. Husband had been employed at the General Motors plant in Kansas City, Kansas, for approximately four and a half years prior to marriage, and he continued to work at that plant until December 2002.[2] While so employed, Husband participated in the company pension plan.

In 2001, Husband began wildly spending money, depleted the couple's assets, and built up a large amount of debt. After Husband had accumulated approximately $750,000 in debt, the couple declared bankruptcy. During this time, Husband's behavior became increasingly erratic.

On April 6, 2002, Wife filed a petition of dissolution of marriage in the Circuit Court of Bates County, and the couple formally separated on April 24, 2002. Husband responded with an answer and counter-petition for dissolution. Both parties requested that they be awarded maintenance from the other.

In May 2002, Husband was admitted to a psychiatric hospital. Later that month, Husband's father, James Coffman, was named Husband's guardian and conservator by order of the probate division of the Bates County Circuit Court.

Husband received temporary disability payments while on leave from General Motors and eventually began receiving Social Security disability benefits. Ultimately, based upon physical and mental problems, Husband was deemed to be permanently and totally disabled and, on that basis, was approved to receive benefit payments from the pension plan. When he officially retired from General Motors, on March 1, 2003, Husband was 45 years old and had worked there for 24 years.

When the dissolution was tried on November 29, 2004, the primary issue litigated was whether Husband's pension benefits should be characterized as a marital or a nonmarital asset. After taking the matter under advisement, on April 6, 2005, the trial court issued its judgment dissolving the couple's marriage, setting aside their nonmarital property and dividing the marital property. The court found that Husband's pension benefits were retirement funds that were a marital asset to the extent they were accumulated during the marriage. Accordingly, the court awarded

1. Both parties had children from previous marriages, and, upon getting married, each adopted the children of the other. Subsequently, one child was born of the marriage. All of the couple's children were emancipated at the time the marriage was dissolved.

2. Husband was laid-off from the plant for portions of this time period, but accumulated service time toward his pension while laid-off.

Wife one-half of 19/24ths of Husband's pension payments, to be provided for in a qualified domestic relations order. The court also ordered each party to pay the other $1.00 per month in modifiable maintenance and ordered Husband to pay $3,000.00 of Wife's attorney's fees. On April 15, 2005, the court issued a qualified domestic relations order granting Wife one-half of 19/24ths of Husband's pension payments. An amended order was later entered allowing Wife to receive her share of the disability benefits payable in the form of an annuity over her lifetime.

In his sole point on appeal, Husband claims that the trial court erred in finding that his pension payments from General Motors were marital property and in awarding Wife a portion of those payments. He contends that the trial court's conclusion was not supported by the evidence and was contrary to the weight of the evidence because the record established that the pension payments were being made as a result of his permanent and total disability and were meant to be a substitute for earnings lost due to his inability to work. He argues that, under Missouri law, such payments are not marital.

"Appellate review of the classification of property in a dissolution action is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *In re Marriage of Cranor*, 78 S.W.3d 150, 153 (Mo.App. S.D.2002). Accordingly, we will affirm the trial court's judgment "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

Ordinarily, pension and retirement plan benefits are deemed to be marital property to the extent they are accumulated during the marriage and are subject to division in a dissolution pro-

ceeding. *Hall v. Hall*, 118 S.W.3d 252, 259 (Mo.App. W.D.2003). On the other hand, disability benefits are not considered to be marital property if they serve as a substitute for earnings lost due to the recipient's inability to work. *In re Marriage of Thomas*, 21 S.W.3d 168, 173 (Mo.App. S.D.2000).

"Missouri follows an 'analytical approach' to determine whether awards or benefits are properly classified as marital or non-marital property." *In re Marriage of Cranor*, 78 S.W.3d at 153. "Under this approach, the focus is on what the benefits are intended to replace." *Id.* " '[I]f disability payments are merely a substitute for earnings lost due to the recipient's inability to work, they are the same as post-dissolution earnings and are nonmarital property.' " *Id.* (quoting *In re Marriage of Thomas*, 21 S.W.3d at 173). "Conversely, pension or retirement benefits that merely act as deferred compensation for past services are considered marital property to the extent they were acquired during the marriage." *Id.* Furthermore, in some instances, benefits may be a hybrid, containing both a disability and a retirement component, and the trial court must separate the nonmarital disability portion from the marital deferred compensation portion. *Id.* at 155–56.

The uncontroverted evidence reflects that Husband could not receive benefits under the pension plan absent his designation as totally and permanently disabled. The evidence reveals that Husband became eligible to receive such benefits after accumulating ten years of service time. Absent a permanent and total disability, however, he could not begin to receive pension benefits until he reached the prescribed retirement age, unless he had accumulated thirty or more years of service. Since Husband had not reached an acceptable age for retirement or accumulated

thirty years of service, he was not eligible to receive pension benefits unless he was deemed to have retired due to a total and permanent disability.

The "Summary Plan Description For General Motors Hourly Retirees and Eligible Survivors" that was submitted into evidence provides, with regard to total and permanent disability pension benefits:

> If you retired because of total and permanent disability, your monthly basic pension benefit is the same as if you were age 65 when you retired. Your benefits are based on your credited service at the time of your disability retirement. In addition, if Social Security determines that you are *not* eligible for disability benefits under the Social Security Act, you may receive a temporary benefit from GM.

> If you are under age 65 and are receiving a total and permanent disability pension benefit, this benefit will cease to be payable if you (1) are no longer totally and permanently disabled, or (2) become gainfully employed for purposes other than rehabilitation.

> \* \* \*

> Those employees who retire under total and permanent disability provisions on or after January 1, 1997, will be reclassified to a normal retirement upon attaining age 65.

While a pension participant does not become eligible to receive permanent and total disability retirement benefits under the pension plan until he or she has accumulated ten years of service and the amount of benefits received is calculated based upon his or her years of service, the permanent and total disability retirement benefits under the plan are clearly meant to replace the income lost due to a participant's permanent and total disability until the participant turns 65 years old. "[T]he term 'disability' . . . connotes money representing lost earnings occasioned by an inability to work. . . ." *In re Marriage of Thomas*, 21 S.W.3d at 173 (quoting *In re Marriage of Medlock*, 749 S.W.2d 437 (Mo. App. S.D.1988)). Moreover, the fact that Husband's pension benefits would cease in the event he was no longer totally and permanently disabled or was able to obtain gainful employment evidences the intent of the pension plan that such benefits serve as a substitute for earnings lost due to the recipient's inability to work rather than as a form of deferred compensation. After the participant reaches age 65, however, the purpose of the benefit payments shifts to providing deferred compensation to the participant, and the plan's designation of the benefit changes to reflect that change.

■ Thus, Husband's pension benefits are a hybrid, containing both a disability and a deferred compensation component. *See In re Marriage of Cranor*, 78 S.W.3d at 155–56. The benefit payments received by Husband up until he turns 65 years old are meant to replace his earnings due to his disability and are, therefore, a nonmarital asset. Those benefits received by Husband after he reaches 65 years old are meant to serve as deferred compensation and are a marital asset.[3]

■ The trial court's finding that all of Husband's pension benefits were meant to serve as deferred compensation and were, therefore, entirely a marital asset is not supported by the evidence and is against the weight of the evidence. Accordingly, the trial court's judgment must be reversed and the cause remanded for entry

---

**3.** Obviously, were Husband ultimately able to return to work and accumulate a sufficient number of years of service time to qualify to receive early retirement benefits on the basis of his service time, such benefits would be marital.

of a judgment properly apportioning the marital and nonmarital aspects of Husband's pension. *See Id.* at 156. Because the trial court's erroneous designation of the pension benefits as marital property may have affected its division of the marital property and debts and its decision regarding maintenance, on remand, the trial court may, in its discretion, reconsider its division of the marital property and debts and its maintenance award. *See Comninellis v. Comninellis,* 99 S.W.3d 502, 515 (Mo.App. W.D.2003); *In re Marriage of Michel,* 142 S.W.3d 912, 923 (Mo. App. S.D.2004); *see also Hill v. Hill,* 67 S.W.3d 659, 661 (Mo.App. E.D.2002) ("When an appellate court changes one part of the decree, upon remand, the trial court may reconsider other portions of the decree in light of that change.").

The judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.